In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Everett E. WOOD, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant,

v.

Everett E. WOOD, Respondent.

Supreme Court

*No. 2011AP1626–D.—Decided January 25, 2013.*

2013 WI 11

(Also reported in 825 N.W.2d 473.)

¶ 1. PER CURIAM. We review the report filed by the referee, Kim M. Peterson, recommending the court suspend Attorney Everett E. Wood's license to practice law in Wisconsin for six months for 28 counts of professional misconduct. No appeal has been filed so we review the referee's report and recommendation pursuant to SCR 22.17(2).[1] We approve and adopt the referee's findings of fact and conclusions of law. We agree that Attorney Wood's professional misconduct warrants a six-month suspension of his license to prac-

---

[1] SCR 22.17(2) states:

> If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

---

tice law, and we deem it appropriate to require Attorney Wood pay the full costs of the proceeding, which were $19,959.24 as of October 1, 2012.

¶ 2. Attorney Wood was admitted to the practice of law in Wisconsin on June 17, 1992. He has most recently practiced in Hubertus, Wisconsin. Attorney Wood has no prior disciplinary history.

¶ 3. On July 18, 2011, the Office of Lawyer Regulation (OLR) filed a complaint against Attorney Wood alleging 28 counts of misconduct. Attorney Wood filed an answer and, on June 29, 2012, the OLR filed a motion for partial summary judgment. On July 31, 2012, the parties entered into a partial fact stipulation supporting 17 of the counts of alleged misconduct.

¶ 4. On August 2, 2012, the referee conducted a telephonic hearing on the OLR's motion for partial summary judgment, and granted the OLR's motion on all counts included in the motion except one on which judgment was reserved until hearing.

¶ 5. On August 6, 2012, the referee conducted an evidentiary hearing on the remaining counts of misconduct. Following submission of post-hearing briefs, the referee issued her report and recommendation concluding the OLR had met its burden and proved the remaining 11 allegations by clear and convincing evidence. The referee recommended a six-month suspension and the imposition of costs. There is no need to detail the extensive allegations and findings. We will briefly summarize the incidents giving rise to the ethical misconduct.

*Matter of W.A. (Counts 1 and 2)*

¶ 6. W.A. hired Attorney Wood in February 2006 to represent her in connection with problems with the

construction of her home, including alleged contractor overbilling. Attorney Wood failed to pursue his client's claims. He was often unresponsive to W.A. and, after W.A.'s contractor filed suit against her, Attorney Wood failed to file any response in the suit he had been hired to defend. Even after the court granted a default judgment against W.A., Attorney Wood failed to communicate with W.A. and later failed to inform W.A. that he was terminating his representation.

*Matter of R.M. (Counts 3 and 4)*

¶ 7. R.M. hired Attorney Wood in 2007 to represent him in a dispute with a homeowner. Attorney Wood sent the bank and title company a demand letter but, when the recipients did not respond, Attorney Wood failed to pursue the matter. Attorney Wood failed to respond to R.M.'s requests for information until R.M. threatened to report Attorney Wood's unresponsiveness. Attorney Wood then performed some work but failed to respond to R.M.'s repeated requests for information, failed to file a summons and complaint, and undertook no other action to resolve R.M.'s claims. R.M. eventually filed a grievance against Attorney Wood whereupon Attorney Wood terminated his representation.

*Matter of T.M. (Counts 5 through 7)*

¶ 8. T.M. hired Attorney Wood in early 2007 to represent him in a dispute with a contractor. Attorney Wood failed to take action on T.M.'s case and, with rare exception, failed to respond to T.M.'s requests for information. Attorney Wood finally filed the summons and

complaint in T.M.'s case in February 2008, but then failed to effect personal service of the summons and complaint.

¶ 9. On July 24, 2008, Attorney Wood failed to attend a dismissal hearing on the lawsuit. The court dismissed the case and Attorney Wood failed to send the dismissal notice to T.M. Eventually, T.M. filed a grievance against Attorney Wood with the OLR. Attorney Wood then failed to timely respond to T.M.'s grievance.

*Matter of A.M. and J.M. (Counts 8 through 12)*

¶ 10. A.M. and J.M. hired Attorney Wood in March 2008 to help them resolve a dispute with a contractor. They paid Attorney Wood $1,000 for future services. Attorney Wood deposited this check into his business account without sending the required notice described in SCR 20:1.15(b)(4m). On April 8, 2008, the contractor filed a lien claim against the property and sent a letter explaining the basis of the claim. A.M. and J.M. forwarded this letter to Attorney Wood, but Attorney Wood failed to respond, except for sending the clients a bill in June 2008.

¶ 11. Attorney Wood essentially took no action to resolve the lien claim. The clients tried to contact Attorney Wood numerous times, with minimal success. Attorney Wood failed to provide his clients with a copy of a letter he sent on their behalf and also failed to send a follow-up letter at the clients' direction. Finally, on May 11, 2009, the clients terminated Attorney Wood's representation, requested he return any remaining funds, and filed a grievance with the OLR. Attorney Wood failed to return $100 of the remaining clients' funds and failed to timely respond to the OLR's inquiries.

*Matter of C.H. (Counts 13 through 17)*

¶ 12. C.H. and his corporation (collectively C.H.) retained Attorney Wood in 2008 in connection with a dispute with V.H. and L.H. On June 6, 2008, Attorney Wood filed suit on behalf of C.H. On August 25, 2008, Attorney Wood spoke with C.H. and filed an answer to a counterclaim. C.H. called Attorney Wood several times over the following months trying to obtain information about the case. Attorney Wood did not return those calls. Attorney Wood failed to appear at a scheduling conference, and he failed to comply with a court directive to file a witness list.

¶ 13. On January 9, 2009, V.H. and L.H filed a third-party summons and complaint and sent it to Attorney Wood, who refused service. Attorney Wood then failed to inform C.H. of the filing. In February 2009 V.H. and L.H moved to exclude C.H.'s witnesses because Attorney Wood had failed to file a witness list. Finally, in the spring of 2009, C.H. discussed his case with another attorney, who unsuccessfully attempted to contact Attorney Wood. The attorney filed a notice of appearance as co-counsel and faxed a copy to Attorney Wood. Attorney Wood never assisted the attorney in transferring C.H.'s file or addressing the motion to exclude C.H.'s witnesses. Attorney Wood did not withdraw as counsel for C.H.

¶ 14. On June 5, 2009, the court heard the exclusion motion filed by V.H. and L.H. Attorney Wood was not present at the hearing. Successor counsel moved to have Attorney Wood removed from the case. The court granted the motion and then ordered C.H. and Attorney Wood to pay $1,400[2] in sanctions, jointly and severally.

---

[2] Attorney Wood has conceded he is solely responsible for the $1,400 in sanctions imposed.

Attorney Wood also repeatedly failed to respond to or adequately cooperate with the OLR's requests for information in this matter.

*Matter of S.H./Trust Account Violations (Counts 18 through 23)*

¶ 15. In 2008 Attorney Wood represented S.H. in a lawsuit against Sears Roebuck and Company (Sears). Sears was represented by Attorney Michael Ganzer. In September 2008 S.H. and Sears settled the lawsuit. Sears agreed to pay S.H. $28,000 for the full and complete release of all of his claims in that particular case. The parties did not discuss whether S.H. would retain any warranty claims.

¶ 16. On October 15, 2008, Attorney Ganzer sent Attorney Wood the settlement documents with a settlement check payable to Attorney Wood's trust account. The check was to be held in trust pending S.H.'s execution of the settlement documents. On October 17, 2008, Attorney Wood deposited the settlement check in his trust account.

¶ 17. On October 31, 2008, S.H. signed the settlement documents but added that Sears was "release[d] as to work performed, [but] product warranties survive." Attorney Wood had not discussed this modification with Attorney Ganzer. Attorney Wood then issued a check to S.H. for S.H.'s portion of the settlement and withdrew $7,000 in cash as fees. Between October 2008 and January 2009, Attorney Wood made six additional cash withdrawals from his trust account. Attorney Wood did not keep individual client ledgers, deposit records, or disbursement records in 2008.

¶ 18. Attorney Ganzer repeatedly requested copies of the executed settlement documents. Attorney

285

Ganzer finally received the settlement documents on December 5, 2008. Attorney Ganzer filed the stipulation and order for dismissal with the court, but objected to changes Attorney Wood had made to the settlement agreement.

¶ 19. On December 12, 2008, Attorney Wood withdrew $6,000 in cash from his trust account as his remaining fee. On December 24, 2008, Attorney Ganzer wrote to Attorney Wood objecting to the changes made in the settlement agreement, and demanding that he get a "clean" release from S.H. Attorney Wood did not respond, and did not return any money to his trust account for the settlement.

¶ 20. After March 2009 Attorney Ganzer's associate contacted Attorney Wood several times to obtain an unedited release or the settlement funds. Attorney Wood did not respond. On June 30, 2009, Attorney Ganzer filed a grievance with the OLR over Attorney Wood's handling of the settlement. Attorney Wood then failed to adequately respond to the OLR's inquiries.

*Matter of K.R. and T.R. (Counts 24 through 27)*

¶ 21. K.R. and T.R. hired Attorney Wood in 2006 to represent them in a potential suit against A. Bishop Farms, Inc. (Bishop). In 2007 Attorney Wood filed suit against Bishop. In May 2008 Bishop and K.R. and T.R. settled the suit, and the court dismissed the case. Bishop agreed to pay an increased amount if it failed to make the payments promised under the settlement agreement.

¶ 22. In July 2008 Bishop breached the settlement agreement, entitling K.R. and T.R. to a judgment of $30,000. In November 2008 Attorney Wood moved to reopen the case and enforce the settlement agree-

ment, seeking a $30,000 judgment against Bishop. At a February 9, 2009 hearing, the court granted the motion to reopen. However, the court granted a judgment for $10,843.22, instead of the $30,000 allowed under the settlement agreement and requested in Attorney Wood's motion. Afterward, Attorney Wood submitted a judgment to the court with the incorrect lower amount. On April 28, 2009, the court entered the judgment. Attorney Wood did not send a copy of the judgment to K.R. and T.R. at that time.

¶ 23. In September 2009 Attorney Wood sent a copy of the judgment to K.R. and T.R. and told them he would have the error fixed. In late 2009 and early 2010, K.R. and T.R. called and e-mailed Attorney Wood several times asking him to correct the judgment. Attorney Wood frequently failed to respond.

¶ 24. Attorney Wood eventually moved to reopen the judgment but failed to send his clients a copy of the motion. The court set a hearing for July 27, 2010. On June 11, 2010, K.R. and T.R. e-mailed Attorney Wood to terminate his representation due to his lack of communication and requested their file. K.R. and T.R. were not aware of the pending motion to reopen that Attorney Wood had finally filed. Attorney Wood did not respond to his clients' e-mail or send them their file. Attorney Wood failed to appear at the July 27, 2010 motion hearing, and the court dismissed the motion.

¶ 25. Between September and December 2010, the OLR made several attempts to contact Attorney Wood to investigate a grievance filed against Attorney Wood related to his representation of K.R. and T.R. Attorney Wood did not respond to the OLR's communications. On January 5, 2011, this court ordered Attorney Wood to show cause why his license should not be suspended for failure to cooperate with the OLR. On January 25, 2011, Attorney Wood finally

responded satisfactorily to the OLR in the K.R. and T.R. matter.

*Unauthorized Practice (Count 28)*

¶ 26. On April 17, 2009, the Board of Bar Examiners (BBE) formally notified Attorney Wood that it would suspend his license to practice law on June 16, 2009, at 4:30 p.m., if he failed to submit satisfactory documentation showing Continuing Legal Education (CLE) hours. On June 16, 2009, Attorney Wood hand-delivered CLE documentation to the BBE, but reported one credit short of the requirements.

¶ 27. On June 17, 2009, the BBE mailed Attorney Wood a notice of suspension. That same day, Attorney Wood appeared on a client's behalf at a worker's compensation hearing. Over the next few days, while suspended, Attorney Wood filed documents with courts in at least three cases. On June 23, 2009, Attorney Wood obtained one ethics CLE credit and achieved reinstatement, effective June 25, 2009.

¶ 28. The referee concluded, both pursuant to the terms of the partial stipulation and following an evidentiary hearing, that Attorney Wood committed the misconduct alleged in the complaint.

¶ 29. The OLR alleged and the referee concluded that Attorney Wood committed the following misconduct: six violations of 20:1.3[3] (Counts 1, 3, 5, 8, 13, 24); one violation of former SCR 20:1.4(a)[4] (effective prior to

---

[3] SCR 20:1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client."

[4] Former SCR 20:1.4(a) stated, "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

288

July 1, 2007) (Count 2) and six violations of current SCR 20:1.4(a)(3) and (4)[5] (Counts 2, 4, 6, 9, 14, 25); five violations of SCR 22.03(2)[6] (Counts 7, 12, 17, 23, 27) and four violations of SCR 22.03(6)[7] (Counts 12, 17, 23, 27), all enforceable via SCR 20:8.4(h);[8] five violations of SCR 20:1.15,[9] the "trust account rule" (Counts 10, 18,

---

[5] SCR 20:1.4(a)(3) and (4) state as follows: "A lawyer shall: ... (3) keep the client reasonably informed about the status of a matter; [and] (4) promptly comply with reasonable requests by the client for information; . . . ."

[6] SCR 22.03(2) states:

> Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

[7] SCR 22.03(6) provides:

> In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

[8] SCR 20:8.4(h) states it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1); . . . ."

[9] The pertinent portions of SCR 20:1.15, the trust account rule, that were found to have been violated are SCR 20:1.15(b), (b)(4), (d)(3), (e)(4), and (f), and provide as follows:

> (b) Segregation of trust property.

(1) Separate account. A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

. . .

(4) Unearned fees and cost advances. Except as provided in par. (4m), unearned fees and advanced payments of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to sub. (g). Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred.

. . .

(d) Prompt notice and delivery of property.

. . .

(3) When the lawyer and another person or the client and another person claim ownership interest in trust property identified by a lien, court order, judgment, or contract, the lawyer shall hold that property in trust until there is an accounting and severance of the interests. If a dispute arises regarding the division of the property, the lawyer shall hold the disputed portion in trust until the dispute is resolved. Disputes between the lawyer and a client are subject to the provisions of sub. (g)(2).

. . .

(e) Operational requirements for trust accounts.

. . .

(4) Prohibited transactions.

a. Cash. No disbursement of cash shall be made from a trust account or from a deposit to a trust account, and no check shall be made payable to "Cash."

. . .

(f) Record-keeping requirements for all trust accounts.

(1) Draft accounts. Complete records of a trust account that is a draft account shall include a transaction register; individual client ledgers for IOLTA accounts and other pooled trust accounts;

a ledger for account fees and charges, if law firm funds are held in the account pursuant to sub. (b)(3); deposit records; disbursement records; monthly statements; and reconciliation reports, subject to all of the following:

. . .

b. Individual client ledgers. A subsidiary ledger shall be maintained for each client or 3rd party for whom the lawyer receives trust funds that are deposited in an IOLTA account or any other pooled trust account. The lawyer shall record each receipt and disbursement of a client's or 3rd party's funds and the balance following each transaction. A lawyer shall not disburse funds from an IOLTA account or any pooled trust account that would create a negative balance with respect to any individual client or matter.

. . .

d. Deposit records. Deposit slips shall identify the name of the lawyer or law firm, and the name of the account. The deposit slip shall identify the amount of each deposit item, the client or matter associated with each deposit item, and the date of the deposit. The lawyer shall maintain a copy or duplicate of each deposit slip. All deposits shall be made intact. No cash, or other form of disbursement, shall be deducted from a deposit. Deposits of wired funds shall be documented in the account's monthly statement.

e. Disbursement records.

1. Checks. Checks shall be pre-printed and pre-numbered. The name and address of the lawyer or law firm, and the name of the account shall be printed in the upper left corner of the check. Trust account checks shall include the words "Client Account," or "Trust Account," or words of similar import in the account name. Each check disbursed from the trust account shall identify the client matter and the reason for the disbursement on the memo line.

2. Canceled checks. Canceled checks shall be obtained from the financial institution. Imaged checks may be substituted for canceled checks.

3. Imaged checks. Imaged checks shall be acceptable if they provide both the front and reverse of the check and comply with the requirements of this paragraph. The information contained on the reverse side of the imaged checks shall include any endorsement signatures or stamps, account numbers, and transaction

291

19, 20, 21); two violations of SCR 20:1.16(d)[10] (Counts 11 and 26); one violation of SCR 20:3.2[11] (Count 15); one violation of SCR 20:3.4(c)[12] (Count 16); one violation of SCR 20:8.4(c)[13] (Count 22); and one violation of SCR 31.10(1),[14]

---

dates that appear on the original. Imaged checks shall be of sufficient size to be readable without magnification and as close as possible to the size of the original check.

[10] SCR 20:1.16(d) states:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[11] SCR 20:3.2 provides "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

[12] SCR 20:3.4(c) says a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists; . . . ."

[13] SCR 20:8.4(c) provides it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . ."

[14] SCR 31.10(1) states:

If a lawyer fails to comply with the attendance requirement of SCR 31.02, fails to comply with the reporting requirement of SCR 31.03(1), or fails to pay the late fee under SCR 31.03(2), the board shall serve a notice of noncompliance on the lawyer. This notice shall advise the lawyer that the lawyer's state bar membership shall be automatically suspended for failing to file evidence of compliance or to pay the late fee within 60 days after service of the notice. The board shall certify the names of all lawyers so suspended under this rule to the clerk of the supreme court, all supreme court justices, all court of appeals and circuit court

292

enforceable via SCR 20:8.4(f)[15] (Count 28).

■

¶ 30. In this case, the referee concluded, and we agree, that a six-month suspension is warranted. The misconduct proven by the OLR is serious, and there is a clear need to protect the public from possible repetition of this kind of misconduct. As the referee observed, Attorney Wood's misconduct goes to the heart of a lawyer's obligations to his client. The referee observed:

> Two of the most important and foundational requirements for a lawyer are to act with diligence and communicate with the client. This case doesn't involve a situation where Mr. Wood attempted to handle a matter that was beyond his legal capacity, or where he simply didn't understand a complicated legal issue. These are matters where Mr. Wood simply failed to act diligently on client matters and then when confronted by his clients, failed to communicate. To compound the issue, when several of Mr. Wood's clients finally lost patience and brought the issue to the OLR for investigation, Mr. Wood often failed to cooperate with the OLR. Further, the misconduct doesn't involve just one case that slipped through the cracks—this misconduct spans a period of time and a series of cases. This is a pattern of misconduct that has caused Mr. Wood's clients unnecessary anxiety, stress and money.

judges, all circuit court commissioners appointed under SCR 75.02(1) in this state, all circuit court clerks, all juvenile court clerks, all registers in probate, the executive director of the state bar of Wisconsin, the Wisconsin State Public Defender's Office, and the clerks of the federal district courts in Wisconsin. A lawyer shall not engage in the practice of law in Wisconsin while his or her state bar membership is suspended under this rule.

[15] SCR 20:8.4(f) states it is professional misconduct for lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers; . . . ."

What is most disturbing is the fact in at [least] three of the matters Mr. Wood has tried to justify his misconduct rather than simply acknowledge he made an error in judgment. Mr. Wood's weak efforts to justify his misconduct leads me to believe that Mr. Wood does not clearly understand his ethical failings and is therefore more likely to repeat this kind of misconduct.

The case law also supports a more serious sanction. In *Disciplinary Proceedings Against Hansen,* 2009 WI 56, 318 Wis. 2d 1, 768 N.W.2d 1, a nine month sanction was imposed for 28 counts of misconduct in four client matters. The misconduct was similar in nature to that alleged in this case, and while the attorney in *Hansen* had a prior private reprimand, his depression also played a role in the misconduct, and could be considered a mitigating factor. In this case, there were 28 counts of misconduct on seven client matters. While there has been no prior discipline, there has been no explanation for the misconduct either.

¶ 31. This court will affirm a referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. *In re Disciplinary Proceedings Against Tully,* 2005 WI 100, ¶ 25, 283 Wis. 2d 124, 699 N.W.2d 882. This court is free to impose whatever discipline it deems appropriate, regardless of the referee's recommendation. *In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 32. We adopt the referee's findings of fact because they have not been shown to be clearly erroneous. We also agree with the referee's conclusions of law and her recommendation regarding discipline. Because this case presents no extraordinary circumstances, we further determine that Attorney Wood should be required to pay the full costs of this matter. *See* SCR 22.24(1m)

(supreme court's general policy upon a finding of misconduct is to impose all costs upon the respondent attorney).

¶ 33. Finally, we turn to the issue of restitution. The referee recommended the court require Attorney Wood to reimburse J.M. and R.M. She notes that the complaint alleged Attorney Wood failed to return an unearned retainer, despite a written request for the refund from the clients. She notes that "[a]mazingly, Mr. Wood argues that he is entitled to retain those remaining funds because he spoke to the client approximately eight times during the course of the representation. However, all of those contacts were initiated by the [clients] in an effort to reach Mr. Wood and inquire about the progress of their case." The referee opined that the clients "shouldn't have to pay a fee to get Mr. Wood to do his job, or to get information about the status of their case."

¶ 34. The referee stated:

I would recommend a refund [of] almost the entire $1000 fee. The new attorney hired by [the clients] likely had to duplicate much of the work billed by Mr. Wood, including reviewing client documents, reading and discussing the expert report . . . . This wasted work accounted for 2.9 hours of the work billed by Mr. Wood, for a total of $652.50. Including the $100 that Mr. Wood agrees was not billed, the total owed the [clients] would be $752.50.

¶ 35. The OLR filed a restitution statement stating its policy on restitution and stating that with respect to this matter it would only seek restitution of $100, explaining that "[s]uccessor counsel's time is not in the record, and regardless, represents incidental or consequential damages." The OLR also sets forth the reasons it does not seek restitution in any other client

295

matter. Attorney Wood had multiple opportunities to object to the recommended restitution before both the referee and this court. He has not done so.

¶ 36. We generally adhere to the OLR's policy with respect to restitution. Here, under the facts presented and in view of the referee's specific recommendation, we determine that Attorney Wood should be ordered to pay restitution in the amount of $752.50.

¶ 37. IT IS ORDERED that the license of Everett E. Wood to practice law in Wisconsin is suspended for a period of six months, effective March 1, 2013.

¶ 38. IT IS FURTHER ORDERED that Everett E. Wood shall pay restitution in the amount of $752.50 plus interest dating from May 11, 2009, to his former clients, A.M. and J.M., within 30 days of the date of this order.

¶ 39. IT IS FURTHER ORDERED that Everett E. Wood shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 40. IT IS FURTHER ORDERED that within 60 days of the date of this order, Everett E. Wood shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶ 41. IT IS FURTHER ORDERED that the restitution specified above is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶ 42. IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. *See* SCR 22.29(4)(c).