# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2013AP2140-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Thomas J. McClure, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>      Complainant,<br>  v.<br>Thomas J. McClure,<br>      Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST MCCLURE

| | |
|---|---|
| OPINION FILED: | March 10, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2013AP2140-D

STATE OF WISCONSIN      :      IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Thomas J. McClure, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant,**

  **v.**

**Thomas J. McClure,**

      **Respondent.**

**FILED**

**MAR 10, 2015**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. We review, pursuant to Supreme Court Rule (SCR) 22.17(2), the report of the referee, Reserve Judge Dennis J. Flynn, recommending that the court suspend Attorney Thomas J. McClure's license to practice law in Wisconsin for a period of six months less one day for 20 counts of misconduct, and also recommending that Attorney McClure be required to complete continuing legal education (CLE) ethics courses.

¶2 Upon careful review of the matter, we adopt the referee's findings of fact and conclusions of law. We conclude, however, that a five-month suspension of Attorney McClure's license is an appropriate sanction for his misconduct. We also conclude that the full costs of the proceeding, which are $13,677.99 as of December 1, 2014, should be assessed against Attorney McClure.

¶3 Attorney McClure was admitted to the practice of law in Wisconsin in 1980 and practices in Delafield. He has no prior disciplinary history.

¶4 On September 26, 2013, the Office of Lawyer Regulation (OLR) filed a complaint alleging that Attorney McClure committed 21 counts of misconduct. Ten counts of misconduct arose out of his handling of three client manners. The remaining 11 counts consisted of various trust account violations.

¶5 Referee Flynn was appointed on February 18, 2014. On September 9, 2014, the parties filed a stipulation whereby Attorney McClure admitted the facts underlying Counts 1-19 of the OLR's complaint. An evidentiary hearing was held before the referee in October 2014. The referee issued his report and recommendation on November 10, 2014. The referee found that the OLR had met its burden of proof with respect to Counts 1-19 and Count 21 of the OLR's complaint. The referee found that the OLR did not meet its burden of proof as to Count 20.

¶6 Counts One-Six of the OLR's complaint arose out of Attorney McClure's representation of J.J. In or about May 2007, J.J. hired Attorney McClure to represent him regarding a claim

2

for personal injuries that resulted from a motor vehicle accident. As part of a mediation agreement signed by J.J. and Attorney McClure, J.J. agreed to settle his claim against the driver of the other vehicle and the driver's insurance company for a payment of $79,000. In a settlement statement to J.J., Attorney McClure specified that the McClure Law Offices' attorney fees and costs were $26,333.07; the attorneys costs, including a partial waiver of $72.67, were $747.80; the outstanding medical bills were $41,919.13; and the net settlement recovery to J.J. was $10,000.00.

¶7 J.J. received a net settlement proceeds check from Attorney McClure in the amount of $10,000 on June 10, 2008. That same day, Attorney McClure made payments with trust account checks to various medical providers totaling $12,567.20. Over the next two years, Attorney McClure made various withdrawals and wrote various checks out of his trust account which resulted in insufficient funds remaining in the trust account to pay J.J.'s outstanding medical bills as required by the settlement statement.

¶8 In July of 2010, J.J. wrote to Attorney McClure saying that several medical bills were still unpaid and were adversely affecting J.J.'s credit rating. Attorney McClure made the final payment to J.J.'s medical providers in February 2011.

¶9 The OLR's complaint alleged the following counts of misconduct with respect to Attorney McClure's handling of J.J.'s settlement:

[COUNT ONE] By failing to inform [J.J.] that he had not promptly paid the medical providers from the settlement funds, and having paid one of the medical providers more than a year after the settlement, and again failing to inform [J.J.] that he had not paid several medical providers, McClure violated SCR 20:1.4(a)(3).[1]

[COUNT TWO] By failing to hold in trust the funds owed to numerous medical providers from the settlement, McClure violated SCR 20:1.15(b)(1).[2]

[COUNT THREE] By commingling his own funds with [J.J.'s] settlement funds in his trust account, McClure violated SCR 20:1.15(b)(3).[3]

[COUNT FOUR] By failing to promptly deliver funds to numerous medical providers, including six medical providers that did not receive their funds for more than two years after the settlement, McClure violated SCR 20:1.15(d)(1).[4]

---

[1] SCR 20:1.4(a)(3) provides that a lawyer shall "keep the client reasonably informed about the status of the matter."

[2] SCR 20:1.15(b)(1) provides:

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

[3] SCR 20:1.15(b)(3) provides that "[n]o funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay monthly account service charges, may be deposited or retained in a trust account."

[4] SCR 20:1.15(d)(1) provides:

Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client

(continued)

[COUNT FIVE]  By failing to maintain a subsidiary individual client ledger for [J.J.], McClure violated SCR 20:1.15(f)(1)b.[5]

[COUNT SIX]  By converting [J.J.'s] settlement funds, which were owed to numerous medical providers, for his own personal use and/or delivering the funds to his other clients or third parties, McClure violated SCR 20:8.4(c).[6]

¶10 After observing various irregularities in Attorney McClure's trust account statements that came to light during the OLR's investigation into J.J.'s grievance, the OLR initiated an inquiry into Attorney McClure's trust account practices.  That inquiry resulted in the 11 counts of misconduct as enumerated in the OLR's complaint:

---

or 3rd party in writing.  Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

[5] SCR 20:1.15(f)(1)b. provides:

A subsidiary ledger shall be maintained for each client or 3rd party for whom the lawyer receives trust funds that are deposited in an IOLTA account or any other pooled trust account.  The lawyer shall record each receipt and disbursement of a client's or 3rd party's funds and the balance following each transaction.  A lawyer shall not disburse funds from an IOLTA account or any pooled trust account that would create a negative balance with respect to any individual client or matter.

[6] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[COUNT SEVEN]  By failing to hold in trust his clients' funds, separate from his own personal funds, McClure violated SCR 20:1.15(b)(1).

[COUNT EIGHT]  By commingling his own funds with the funds of clients and third-parties in his trust account for at least four years, McClure violated SCR 20:1.15(b)(3).

[COUNT NINE]  By making at least 670 in-person cash withdrawals from his trust account, McClure violated SCR 20:1.15(e)(4)a.[7]

[COUNT TEN]  Having his trust account check number 161 returned for insufficient funds, and therefore disbursing the funds from his trust account without the funds being available for disbursement, McClure violated SCR 20:1.15(e)(5)a.[8]

[COUNT ELEVEN]  By failing to maintain a transaction register for his trust account, McClure violated SCR 20:1.15(f)(1)a.[9]

---

[7] SCR 20:1.15(e)(4)a. provides that "[n]o disbursement of cash shall be made from a trust account or from a deposit to a trust account, and no check shall be made payable to 'Cash.'"

[8] SCR 20:1.15(e)(5)a. provides that "[a] lawyer shall not disburse funds from any trust account unless the deposit from which those funds will be disbursed has cleared, and the funds are available for disbursement."

[9] SCR 20:1.15(f)(1)a. provides:

The transaction register shall contain a chronological record of all account transactions, and shall include all of the following:

1. the date, source, and amount of all deposits;

2. the date, check or transaction number, payee and amount of all disbursements, whether by check, wire transfer, or other means;

3. the date and amount of every other deposit or deduction of whatever nature;

(continued)

6

[COUNT TWELVE]  By failing to maintain individual client ledgers for his clients, McClure violated SCR 20:1.15(f)(1)b.

[COUNT THIRTEEN]  By failing to prepare and retain a printed reconciliation report on a regular and periodic basis not less frequently than every 30 days, McClure violated SCR 20:1.15(f)(1)g.[10]

[COUNT FOURTEEN]  By failing to file an overdraft notification agreement with OLR for his trust account, McClure violated SCR 20:1.15(h)(8).[11]

---

4. the identity of the client for whom funds were deposited or disbursed; and

5. the balance in the account after each transaction.

[10] SCR 20:1.15(f)(1)g. provides:

For each trust account, the lawyer shall prepare and retain a printed reconciliation report on a regular and periodic basis not less frequently than every 30 days.  Each reconciliation report shall show all of the following balances and verify that they are identical:

1. the balance that appears in the transaction register as of the reporting date;

2. the total of all subsidiary ledger balances for IOLTA accounts and other pooled trust accounts, determined by listing and totaling the balances in the individual client ledgers and the ledger for account fees and charges, as of the reporting date; and

3. the adjusted balance, determined by adding outstanding deposits and other credits to the balance in the financial institution's monthly statement and subtracting outstanding checks and other deductions from the balance in the monthly statement.

[11] SCR 20:1.15(h)(8) provides:

Every lawyer practicing or admitted to practice in Wisconsin shall comply with the reporting and

(continued)

7

[COUNT FIFTEEN] By filing false certificates with the State Bar of Wisconsin in which he certified that he had complied with each of the record-keeping requirements, McClure violated SCR 20:1.15(i)(4).[12]

[COUNT SIXTEEN] By placing all monies received by his office into his trust account in an effort to protect income from seizure at a time when he was the subject of Wisconsin Department of Revenue tax warrants, McClure violated SCR 20:8.4(c).

[COUNT SEVENTEEN] By failing to timely file his state and federal tax returns for the years of 2008, 2009, and 2010, McClure violated SCR 20:8.4(f).[13]

¶11 The OLR's complaint also alleged three counts of misconduct arising out of Attorney McClure's representation of J.K. J.K. was charged in a Kenosha County case filed in June of 2011 with Child Abuse-Intentionally Cause Harm, a class H felony; Battery, a class A misdemeanor; and Disorderly Conduct, a class B misdemeanor.

¶12 On June 13, 2011, Attorney McClure sent an electronic response via a "legalmatch" website to M.K., J.K.'s mother,

---

production requirements of this subsection, including filing of an overdraft notification agreement for each IOLTA account, each draft-type trust account and each draft-type fiduciary account that is not subject to an alternative protection under sub. (j)(9).

[12] SCR 20:1.15(i)(4) provides that "[t]he failure of a state bar member to file the certificate is grounds for automatic suspension of the member's membership in the state bar in the same manner provided in SCR 10.03(6) for nonpayment of dues. The filing of a false certificate is unprofessional conduct and is grounds for disciplinary action."

[13] SCR 20:8.4(f) provides that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

saying that Attorney McClure was a respected former prosecutor with 20 years of private practice criminal defense experience and that Attorney McClure could help J.K. Attorney McClure told M.K. that he offered "a free consultation, convenient evening and weekend appointments and a simple up front flat fee." Attorney McClure went on to tell M.K., "The total fee that I would charge for this case is $2,500, pending more information from you. The entire fee payment is due when I take your case. Standard flat fee for domestic violence and felony child abuse charge."

¶13 On June 16, 2011, M.K. hired Attorney McClure to represent her son and paid Attorney McClure a flat fee of $2,500, which Attorney McClure deposited directly into his business account. There is no documentary evidence of a written fee agreement between Attorney McClure and M.K. and/or J.K. J.K. obtained successor counsel, whose appearance was entered on September 8, 2011.

¶14 M.K. and J.K. filed a grievance against Attorney McClure, alleging various concerns about his representation of J.K. M.K. stated in the grievance, "Attorney McClure informed me after I hired him that it would cost me an additional $2,500.00 if my son's case went to trial."

¶15 The OLR's complaint alleged three counts of misconduct with respect to Attorney McClure's handling of J.K.'s case:

> [COUNT EIGHTEEN] By failing to have a written fee agreement communicating the requisite information

for his representation of [J.K.], McClure violated SCR 20:1.5(b)(1) and (2).[14]

[COUNT NINETEEN] By depositing [J.K.'s] unearned advanced fee payment directly into his business bank account, without acting in a manner indicating an intention to use the alternative fee placement measures stated in SCR 20:1.15(b)(4m), McClure violated SCR 20:1.15(b)(4).[15]

[COUNT TWENTY] By informing his new client that he would charge her an additional fee for taking the matter to trial which was double the amount he said he would charge to handle the engagement, McClure violated SCR 20:8.4(c).

---

[14] SCR 20:1.5(b), as relevant here, provides:

(1) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate as in the past. If it is reasonably foreseeable that the total cost of representation to the client, including attorney's fees, will be $1000 or less, the communication may be oral or in writing. Any changes in the basis or rate of the fee or expenses shall also be communicated in writing to the client.

(2) If the total cost of representation to the client, including attorney's fees, is more than $1000, the purpose and effect of any retainer or advance fee that is paid to the lawyer shall be communicated in writing.

[15] SCR 20:1.15(b)(4) provides that, "[e]xcept as provided in par. (4m), unearned fees and advanced payments of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to sub. (g). Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred."

¶16 Finally, the OLR's complaint alleged one count of misconduct with respect to Attorney McClure's representation of C.G. On February 12, 2010, Attorney McClure sent an electronic response via the "legalmatch" website to a member of C.G.'s family, saying, "I am available immediately and do not charge for the initial consultation. I practice in this court regularly and am a respected former Rock County Asst. DA." Attorney McClure stated that the total fee he would charge for the case was $2,500 and that the entire fee payment would be due when he took the case.

¶17 C.G. hired Attorney McClure to represent him on charges of possession of THC (second offense), a class I felony; Manufacture/Deliver THC, a class F felony; and Maintain Drug Trafficking Place, a class I felony. Attorney McClure was also hired to represent C.G. in a revocation case. Both cases were pending in Rock County.

¶18 On February 23, 2010, C.G.'s mother paid Attorney McClure $2,000 as a partial payment of the $2,500 flat fee. On April 2, 2010, C.G.'s brother paid Attorney McClure the final $500 of the flat fee.

¶19 In March of 2012, over a year after Attorney McClure's representation of C.G. concluded, C.G. filed a grievance with the OLR alleging various concerns regarding Attorney McClure's representation of C.G. As part of his response to the grievance, Attorney McClure provided the OLR with a copy of his entire file. The file contained no documentary evidence of a

written fee agreement beyond the electronic communication on "legalmatch."

¶20 The OLR's complaint alleged the following count of misconduct with respect to Attorney McClure's representation of C.G.:

> [COUNT TWENTY-ONE] By failing to have a written fee agreement communicating the requisite information for his representation of [C.G.], McClure violated SCR 20:1.5(b)(1) and (2).

¶21 By entering into the stipulation, Attorney McClure admitted the facts underlying Counts 1-19 of the OLR's complaint. He contested Counts 20 and 21. The referee concluded that the OLR failed to meet its burden of proof as to Count 20. The referee found that the OLR did meet its burden of proof as to Count 21. Thus, the referee found that Attorney McClure committed 20 counts of misconduct.

¶22 The referee noted that the main focus of the evidentiary hearing was on the appropriate sanction to be imposed in this case. The referee noted that both parties recommended some period of license suspension, with the OLR seeking a two-year suspension and Attorney McClure seeking a suspension in the three to five month range. The referee said the case presented both aggravating and mitigating factors, with the aggravating factors including the fact that there were 20 counts of misconduct that occurred over a number of years and involved several clients. The referee said Attorney McClure's intent as to the misconduct can be discerned from the incidents related to the tax warrants, the comingling of personal and

12

trust account funds, the withholding of payments due to J.J.'s medical providers, and the use of trust account funds for personal purposes. In addition, the referee noted that J.J.'s credit was negatively affected as a result of the late payments made from settlement funds to medical providers, and the referee found that Attorney McClure engaged in deceit with respect to failure to maintain client communication with J.J.

¶23 The referee found that numerous mitigating factors existed in this matter, including the fact that no monies were lost to clients or medical providers with respect to any of the trust account anomalies; Attorney McClure has no prior disciplinary history; Attorney McClure cooperated fully with the OLR in its investigation; Attorney McClure has made a real effort to provide restitution to J.J. for the injury to his credit; and Attorney McClure had many serious personal problems that impacted his actions, including the death of his first grandchild, caring for his elderly parents, attending the needs of his mentally ill older brother, and taking on an excessive number of pro bono cases. The referee found that Attorney McClure was genuinely remorseful. The referee said Attorney McClure is and has been throughout his legal career a lawyer respected by his clients, his peers, and the judges before whom he practiced, and was known for his willingness to help others and for not seeking personal wealth. The referee said Attorney McClure has publicly acknowledged his misconduct to the faith community at his church as part of his personal rehabilitation,

13

and the referee said this demonstrates the attorney's commitment to not again engage in lawyer misconduct.

¶24 After noting that the OLR's complaint alleged 21 separate acts of misconduct, the referee said:

> But something is unusual. Why are there so many separate Counts charged here? It appears that Complainant decided to include in its Complaint every possible wrong it could find. While that is its right, it still causes the Referee to wonder why this happened in a case where the attorney of over 33 years here in Wisconsin had never had any prior discipline and no client or medical provider lost any funds and OLR knew of the personal hardships which impacted that attorney during the period of misconduct. OLR has not challenged Respondent's assertion of him having many, many serious personal issues affecting him during the time period of the misconduct. It appears to the referee from the case record that the reason for Complainant bringing so many Counts was/is to create, for the Sanction portion of the proceeding, an impression that a great wrong has occurred because of the number of findings of misconduct and, therefore, a major and significant penalty should be imposed.
>
> The danger with that approach is that the prosecutor then is forever encouraged to overcharge in cases where there is clear wrong-doing on one or a few Counts in order to argue for and obtain the imposition of ever more severe sanctions. Here the Respondent acknowledged his wrongdoing as can be seen by the stipulation that was received into the case record. But when all is said and done the Respondent still is seen to have committed acts of misconduct in the areas of his Trust Account, his fee agreement/communication document and dishonesty. Saying the foregoing is in no way an effort to diminish the misconduct that occurred. But did Respondent's conduct warrant a complaint with 21 separate Counts? A schoolyard metaphor would be that piling on was occurring by youngsters during the recess.
>
> . . . .

14

In this case it appears that the prosecutor has filed an unreasonable and excessive number of Counts, not because it could meet its burden, but in order to coerce and unfairly impact that portion of the proceedings that addresses sanctions. The referee doesn't know what should be the exact number of Counts in this case, but 21 would appear clearly excessive and intended to influence the sanctions that should be imposed. . . . .

¶25 The referee went on to say:

Respondent is a very good, but not a perfect, man and attorney. On balance in his 33-plus years as a lawyer he has labored hard and brought great credit to the legal profession. . . . That said, however, it is also clear that he has violated . . . the Supreme Court Rules that regulate all attorneys in this State. The public must be protected from misconduct by an attorney that causes resources to be converted and diminishes respect for the rule of law. While respondent's misconduct was real and over a substantial period of time, it is mitigated by his very positive and exemplary 33 year career as a practicing lawyer, his actions taken to correct the consequences of his misconduct, and by the great number of personal struggles that confronted and motivated him as he lost his moral compass during the very period when the misconduct occurred. . . . As a 59 year old man with no prior lawyer misconduct, he is seeking an opportunity to be sanctioned fairly and appropriately.

¶26 The referee recommended that Attorney McClure's license to practice law be suspended for a period of six months less one day, the result being that the attorney would be able to obtain the reinstatement of his law license upon demonstrating, through an affidavit, that he is in full compliance with all terms and conditions of the order of suspension. See SCR 22.28(2). The referee also recommended that Attorney McClure be ordered to successfully complete 15 hours of CLE ethics courses, at least eight of which should

15

focus on trust account administration. The referee further recommended that Attorney McClure be responsible for the full costs of the disciplinary proceeding. The referee said the sanctions are significant and are appropriate to address the wrongdoing that occurred here as well as to achieve the important goal of deterrence in the future.

¶27 A referee's findings of fact are affirmed unless clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit, regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶28 There is no showing that any of the referee's findings of fact are clearly erroneous. Accordingly, we adopt them. We also agree with the referee's conclusions of law that Attorney McClure violated the supreme court rules set forth above.

¶29 With respect to the appropriate level of discipline, upon careful review of the matter, we conclude that a five-month suspension is appropriate. As the referee pointed out, Attorney McClure's law practice now spans more than 34 years and he has no prior disciplinary history. It is also significant to reiterate that no clients or medical providers lost any funds, and that Attorney McClure fully cooperated with the OLR and entered into a stipulation whereby he admitted virtually all the facts alleged in the complaint. We also find it significant that the referee, who was in the best position to judge witness

16

credibility, found Attorney McClure to be genuinely remorseful. In addition, the OLR does not dispute the fact that Attorney McClure was faced with a multitude of personal problems during the time period at issue in this case.

¶30 We also share the referee's concern that there was perhaps an element of overcharging, or at least parsing the misconduct into more counts than was truly warranted. We fully agree with the referee that Attorney McClure's misconduct was not insignificant and warrants a suspension. However, after careful consideration of the matter, including the various aggravating and mitigating factors identified by the referee, we conclude that a five-month suspension will sufficiently protect the public from similar misconduct as well as impose upon Attorney McClure the gravity of his offenses. While no two attorney disciplinary cases are precisely the same, a five-month suspension is generally consistent with the sanctions imposed in somewhat analogous situations. See, e.g., In re Disciplinary Proceedings Against Wood, 2013 WI 11, 345 Wis. 2d 279, 825 N.W.2d 473 (six-month suspension imposed for 28 counts of misconduct, including multiple trust account violations). We further agree with the referee's recommendation that Attorney McClure should be required to successfully complete 15 hours of CLE ethics courses, with at least eight of those hours focusing on trust account administration. Finally, we agree with the referee that Attorney McClure should bear the full costs of this proceeding.

17

¶31 IT IS ORDERED that the license of Thomas J. McClure to practice law in Wisconsin is suspended for a period of five months, effective April 9, 2015.

¶32 IT IS FURTHER ORDERED that, as a condition of the reinstatement of his license to practice law in Wisconsin, Thomas J. McClure shall successfully complete 15 hours of continuing legal education ethics courses, with at least eight of those hours focusing on trust account administration.

¶33 IT IS FURTHER ORDERED that within 60 days of the date of this order, Thomas J. McClure should pay to the Office of Lawyer Regulation the costs of this proceeding, which are $13,677.99.

¶34 IT IS FURTHER ORDERED that Thomas J. McClure shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶35 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(2).

1