# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP666-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Terry L. Constant, Attorney at Law: |
| | Office of Lawyer Regulation, Complainant-Respondent-Cross-Appellant, v. Terry L. Constant, Respondent-Appellant-Cross-Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST CONSTANT

| | |
|---|---|
| OPINION FILED: | January 28, 2020 |
| SUBMITTED ON BRIEFS: | October 24, 2019 |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| HAGEDORN, J. dissents (opinion filed) | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the respondent-petitioner-cross-respondent, there were briefs filed by *Terry L. Constant*, Kenosha.

For the complainant-respondent-cross-appellant, there was a brief filed by *Jonathan E. Hendrix* and *Office of Lawyers Regulation*, Madison.

**2020 WI 4**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP666-D

STATE OF WISCONSIN : IN SUPREME COURT

In the Matter of Disciplinary Proceedings
Against Terry L. Constant, Attorney at Law:

Office of Lawyer Regulation,

       Complainant-Respondent-
       Cross-Appellant,

    v.

Terry L. Constant,

       Respondent-Appellant-
       Cross-Respondent.

**FILED**

**JAN 28, 2020**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. Attorney Terry L. Constant has appealed a report and recommendation filed by Referee Dennis J. Flynn, concluding that Attorney Constant committed eight counts of professional misconduct and recommending that his license to practice law in Wisconsin be suspended for five months. Attorney Constant argues that the referee mistakenly allowed his bank records into evidence; that the Office of Lawyer Regulation (OLR) failed to meet its burden of proof as to the eight counts of

misconduct; that the referee erred in making a credibility determination; and that a five-month suspension of his license to practice law is an excessive sanction. The OLR has filed a cross-appeal arguing that a five-month suspension is insufficient and that this court should suspend Attorney Constant's license for at least one year.

¶2 Upon careful review of this matter, we uphold the referee's findings of fact and conclusions of law. We conclude that a six-month suspension of Attorney Constant's Wisconsin law license is an appropriate sanction for the misconduct at issue. We also find it appropriate to follow our normal custom of imposing the full costs of this disciplinary proceeding, which are $13,409.63 as of December 10, 2019, on Attorney Constant.

¶3 Attorney Constant was admitted to practice law in Wisconsin in 1968 and practices in Kenosha. He has no prior disciplinary history.

¶4 On April 14, 2017, the OLR filed a complaint alleging nine counts of misconduct. In 2009, M.B. hired Attorney Constant to represent her in a personal injury case. In 2010 and 2011, Attorney Constant disbursed 13 checks from his trust account at U.S. Bank in connection with M.B.'s claim. Attorney Constant had not deposited any funds into the trust account for his representation of M.B. when he wrote the checks.

¶5 In January 2012, Attorney Constant filed a lawsuit on behalf of M.B. in Kenosha County Circuit Court. In the first half of 2013, Attorney Constant settled M.B.'s claim for $175,000. Between June 14 and July 5, 2013, Attorney Constant disbursed six

2

checks from his client trust account totaling $3,144 in connection with M.B.'s case. One of the checks was payable to Attorney Constant in the amount of $1,000. During this time period, Attorney Constant had not deposited any funds into his trust account for M.B.'s case.

¶6 On July 9, 2013, Attorney Constant deposited the $175,000 settlement check into his trust account. He did not promptly notify M.B. in writing that he had received and deposited the funds. Attorney Constant's settlement statement showed he was entitled to $50,000 in attorney's fees and $5,290.93 in costs.

¶7 Between July 11, 2013 and October 10, 2013, Attorney Constant disbursed $57,300 in attorney fees and $2,028.71 for costs in the M.B. matter out of funds in his trust account. After these disbursements, the trust account held $178,359.13, of which $115,421.29 was attributable to M.B.'s case.

¶8 During November and December of 2013, Attorney Constant transferred $16,200 from his trust account to his business account without identifying the client matter. During the same time frame, Attorney Constant withdrew $4,600 in cash from the trust account without identifying the purpose or client matter. On December 31, 2013, the trust account had a balance of $86,386.58. It should have held $115,421.29 in the M.B. matter alone.

¶9 The $175,000 settlement amount was subject to numerous liens, and Attorney Constant negotiated settlements with the lienholders so that M.B. would recover a portion of the $175,000. On January 10, 2014, Attorney Constant disbursed a $21,882.35 trust account check to the federal government in the M.B. matter. After

3

issuing this check, the trust account held $70,108.53. Attorney Constant should have been holding $93,538.94 for the M.B. matter alone.

¶10 On January 21, 2014, Attorney Constant issued a check for $40,000 to M.B. in partial payment of the settlement funds. At that point his trust account should have held $53,538.94 in remaining funds for M.B., but the entire balance in the trust account was $19,021.16.

¶11 On January 2, 2015, Attorney Constant's trust account had a balance of $363.11. On January 13, 2015, Attorney Constant deposited $800,000 into the trust account which was unrelated to the M.B. matter. Attorney Constant's trust account records show that on January 14, 2015 he disbursed $25,000 from the trust account to himself for reimbursement of costs in the M.B. matter.

¶12 On January 16, 2015, Attorney Constant issued a $10,000 trust account check to M.B. Without the $800,000 deposit a few days earlier, which was not related to M.B.'s case, the trust account did not have enough funds to cover the $10,000 check.

¶13 Attorney Constant's trust account records show that on February 7, 2015, he paid M.B. $4,540.58. As of the date the OLR filed its complaint, Attorney Constant retained $2,100.65 in settlement proceeds due to M.B. The record indicates that during the prosecution of this case, Attorney Constant made full restitution to M.B.

¶14 On April 22, 2014, Attorney Constant transferred $15,000 in personal funds from his business account to his trust account, raising the balance of the trust account to $15,759.57.

4

¶15 On October 29, 2014, Attorney Constant deposited $9,500.94 into his trust account in connection with the K.C. matter. After this deposit, the trust account had a balance of $9,548.98.

¶16 On October 30, 2014, Attorney Constant withdrew $4,300 in attorney fees from his trust account and deposited that amount into his business account. The remaining balance in the trust account was then $5,248.98.

¶17 On October 31, 2014, Attorney Constant wrote two trust account checks, one for $68.30 for a lien in the K.C. case and $1,467.32 to K.C.

¶18 On November 3, 2014, Attorney Constant transferred $2,000 from his trust account to his business account. On November 4, 2014, Attorney Constant withdrew $500 in cash from the trust account. On November 5, 2014, Attorney Constant withdrew $1,500 in cash from the trust account, leaving a balance of $1,248.98. That same day, U.S. Bank denied payment on Attorney Constant's October 31, 2014 check in the amount of $1,467.32 due to insufficient funds. On November 7, 2014, U.S. Bank denied payment on the check again, as Attorney Constant had not deposited any additional funds into the trust account.

¶19 After the denial of payment by U.S. Bank, Attorney Constant wrote a replacement check payable to K.C. in the amount of $1,467.32. The replacement check cleared the trust account on November 17, 2014.

¶20 In October and November of 2014, Attorney Constant made 13 cash withdrawals totaling $11,730 from his trust account.

During October and December of 2014, Attorney Constant made eight electronic transfers from the trust account into his business account. He had made other electronic transfers from the trust account to the business account since July 2013.

¶21 Attorney Constant maintained a transaction register for October and November of 2014, but it did not include accurate balances following his transactions; the date, payee, and amount of all disbursements; a $500 transfer from the trust account to the business account; various checks that were issued; return of the K.C. checks that caused the overdrafts; the identity of all clients for whom Attorney Constant disbursed funds; and accurate dates for the transactions.

¶22 Attorney Constant's client ledgers did not consistently contain accurate dates, amounts of deposits and disbursements which he had made on his clients' behalf, nor did it consistently contain balances of funds remaining in the trust account pertaining to each client.

¶23 In November 2014, Attorney Constant's bank informed the OLR of the overdrafts in Attorney Constant's trust account. On December 9, 2014, the OLR notified Attorney Constant of its investigation into the overdrafts. During the investigation, Attorney Constant provided the OLR with trust account and client records that were sometimes inconsistent with each other and incomplete. During the investigation, Attorney Constant wrote to the OLR representing he had not made cash withdrawals from his trust account.

6

¶24 The OLR's complaint alleged the following counts of misconduct:

**Count One:** By making disbursements from the trust account on behalf of M.B. prior to any funds having been deposited into the client trust account attributable to her matter, Attorney Constant violated former SCR 20:1.15(f)(1)b.[1]

**Count Two:** By failing to provide M.B. with written notice of receipt of the $175,000 settlement proceeds received in trust during July, 2013; by failing to promptly deliver and distribute all of the settlement proceeds to M.B.; and by failing to provide M.B. with a written settlement statement setting forth a full accounting regarding the property and final distribution of the property, Attorney Constant violated former SCR 20:1.15(d)(1) and (d)(2).[2]

---

[1] Effective July 1, 2016, substantial changes were made to Supreme Court Rule 20:1.15, the "trust account rule." See S. Ct. Order 14-07, 2016 WI 21 (issued Apr. 4, 2016, eff. July 1, 2016). Because the conduct underlying this case arose prior to July 1, 2016, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2016.

Former SCR 20:1.15(f)(1)b. provided:

A subsidiary ledger shall be maintained for each client or 3rd party for whom the lawyer receives trust funds that are deposited in an IOLTA account or any other pooled trust account. The lawyer shall record each receipt and disbursement of a client's or 3rd party's funds and the balance following each transaction. A lawyer shall not disburse funds from an IOLTA account or any pooled trust account that would create a negative balance with respect to any individual client or matter.

[2] Former SCR 20:1.15(d)(1) and (d)(2) provided:

(1) Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or

7

**Count Three:** By converting, via electronic transfers to his business account and cash withdrawals, funds he held in trust in the M.B. matter and other matters, Attorney Constant violated SCR 20:8.4(c).[3]

**Count Four:** By failing to have funds in his trust account sufficient to cover the amounts recorded as being held in trust for multiple clients, and by withdrawing cash, electronically transferring funds to his business account, and disbursing funds without sufficient amounts in trust for the related matters, Attorney Constant violated SCR 20:1.15(b)(1).[4]

**Count Five:** By depositing $15,000 of his personal funds into the trust account on April 22, 2014, Attorney Constant violated former SCR 20:1.15(b)(3).[5]

---

otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

(2) Upon final distribution of any trust property or upon request by the client or a 3rd party having an ownership interest in the property, the lawyer shall promptly render a full written accounting regarding the property.

[3] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[4] SCR 20:1.15(b)(1) provides:

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

[5] Former SCR 20:1.15(b)(3) provided: "No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay monthly account service charges may be deposited or retained in a trust account."

**Count Six:** By making 13 withdrawals totaling $11,730 from his trust account for cash during October and November, 2014, Attorney Constant violated former SCR 20:1.15(e)(4)a.[6]

**Count Seven:** By making several non-wire, direct, electronic transfers of funds from his trust account to his business account between July 1, 2013 and December 2014, Attorney Constant violated former SCR 20:1.15(e)(4).[7]

---

[6] Former SCR 20:1.15(e)(4)a. provided: "No disbursement of cash shall be made from a trust account or from a deposit to a trust account, and no check shall be made payable to 'Cash.'"

[7] Former SCR 20:1.15(e)(4) provided:

Prohibited transactions.

a. No disbursement of cash shall be made from a trust account or from a deposit to a trust account, and no check shall be made payable to 'Cash.'

b. No disbursement deposits or disbursement shall be made to or from a pooled trust account by a telephone transfer of funds. This section does not prohibit any of the following:

1. wire transfers.

2. telephone transfers between non-pooled draft and non-pooled non-draft trust accounts that a lawyer maintains for a particular client.

c. A lawyer shall not make deposits to or disbursements from a trust account by way of an Internet transaction.

d. A lawyer shall not authorize a 3rd party to electronically withdraw funds from a trust account. A lawyer shall not authorize a 3rd party to deposit funds into the lawyer's trust account through a form of electronic deposit that allows the 3rd party making the deposit to withdraw the funds without the permission of the lawyer.

**Count Eight:** By failing to maintain the requisite client trust account records, such as a transaction register, individual client ledgers, deposit records, disbursement records, monthly statements and reconciliation reports, Attorney Constant violated former SCR 20:1.15(f)(1).[8]

**Count Nine:** By falsely stating in a letter to the OLR dated February 15, 2015 that he did not withdraw cash

---

[8] Former SCR 20:1.15(f)(1) provided:

Complete records of a trust account that is a draft account shall include a transaction register; individual client ledgers for IOLTA accounts and other pooled trust accounts; a ledger for account fees and charges, if law firm funds are held in the account pursuant to sub. (b)(3); deposit records; disbursement records; monthly statements; and reconciliation reports, subject to all of the following:

a. The transaction register shall contain a chronological record of all account transactions, and shall include all of the following:

1. the date, source, and amount of all deposits;

2. the date, check or transaction number, payee and amount of all disbursements, whether by check, wire transfer, or other means;

3. the date and amount of every other deposit or deduction of whatever nature;

4. the identity of the client for whom funds were deposited or disbursed; and

5. the balance in the account after each transaction.

10

from his trust account, Attorney Constant violated SCR 22.03(6);[9] via SCR 20:8.4(h).[10]

¶25 Attorney Constant filed an answer and affirmative defenses on May 26, 2017. The referee was appointed on June 5, 2017. During the course of the proceeding, the OLR voluntarily dismissed Count Nine of its complaint. An evidentiary hearing was held on November 5, 2018. The witnesses at the hearing were Attorney Constant, M.B., M.B.'s boyfriend, and an OLR investigator.

¶26 The referee issued his report and recommendation on February 19, 2019. The referee found that the OLR had proved by clear, satisfactory, and convincing evidence that Attorney Constant committed the remaining eight counts of misconduct alleged in the OLR's complaint. Although the OLR had sought a two-year suspension of Attorney Constant's Wisconsin law license, the referee concluded that a five-month suspension was an appropriate sanction for Attorney Constant's misconduct.

¶27 The referee said that the misconduct at issue here is serious. He noted the violations of trust account rules were multiple and occurred over a number of years. The referee pointed

---

[9] SCR 22.03(6) provides: "In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[10] SCR 20:8.4(h) provides: "It is professional misconduct for a lawyer to fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

out that Attorney Constant's area of practice was in the field of personal injury law, and he said Attorney Constant's failure to provide written notices to M.B. regarding the receipt of settlement funds and then not providing an accurate settlement statement at the conclusion of the case were major violations of the duties owed to his client.

¶28  The referee also said Attorney Constant's practice of electronic transfers and multiple cash withdrawals that were not allocated to a specific client appear to be part of an effort to convert funds from the client and to conceal Attorney Constant's wrongdoing by intentionally violating supreme court rules.  The referee said the deposit of Attorney Constant's own funds into his trust account to avoid an overdraft grossly represented a knowing and intentional rule violation.  Further, the referee said Attorney Constant took no action to reconcile the differences between his trust account bank records and his own business records.  The referee noted that in M.B.'s case, these failures occurred repeatedly over more than two years.  The referee said Attorney Constant's actions and non-actions were consistent with not caring about the problems in his trust account or not wanting to take actions to correct those problems.

¶29  The referee went on to say Attorney Constant has avoided responsibility for his actions throughout the OLR's investigation. The referee said Attorney Constant consistently blamed others without any corroboration.  Attorney Constant blamed the Quicken software program he used; he blamed unnamed employees at U.S. Bank who he claimed gave him incorrect instructions on how to operate

his trust account; he claimed his own trust account and business bank records should not have been admitted into evidence; and he excused his misconduct by noting that neither M.B. nor the lienholders in her case suffered any loss. The referee said this type of rationalization indicated a lack of insight into the misconduct and showed that Attorney Constant had no remorse for his improper actions. The referee said it was critically important that the seriousness of his wrongdoing be impressed upon Attorney Constant.

¶30 The referee also found a number of mitigating factors. The referee noted that Attorney Constant has practiced law in Wisconsin for over 50 years and has not previously been the subject of any disciplinary action. The referee also said that Attorney Constant has brought credit to the legal profession by his many positive community involvements in the city and county of Kenosha. In addition, for over ten years Attorney Constant provided pro bono legal services through Legal Action of Wisconsin. In the 1980s Attorney Constant was a charter member of Kenoshans Against Sexual Assault, and he also served on the Board of Directors for the Salvation Army for many years.

¶31 The referee said Attorney Constant brought forward a basketball analogy of "no harm/no foul" to support his position that M.B. and all of the lienholders in her case did ultimately receive all of the money that was due them. The referee said this attitude was consistent with Attorney Constant's assertion that he did nothing that constituted a violation of supreme court rules.

13

¶32 The referee ultimately concluded that a five-month suspension of Attorney Constant's Wisconsin law license was an appropriate sanction for his misconduct. In support of his recommendation, the referee cited In re Disciplinary Proceedings Against McClure, 2015 WI 25, 361 Wis. 2d 339, 860 N.W.2d 474. Attorney McClure stipulated to 11 counts of misconduct involving trust account violations, and various other counts of misconduct. The referee in that case found Attorney McClure to be generally remorseful. Attorney McClure fully cooperated with the OLR, and the OLR did not dispute the fact that Attorney McClure was faced with a multitude of personal problems during the time period at issue.

¶33 In addition to a five-month suspension, the referee in the instant case also recommends that Attorney Constant should be ordered to attend and successfully complete 12 hours of continuing legal education (CLE) courses approved in advance by the OLR; at least six hours of which should be in OLR approved courses relating to proper trust account management. Further, the referee recommends that if Attorney Constant desires to resume the practice of law, he should have his trust account monitored by the OLR for at least two years. The referee also recommends that Attorney Constant be ordered to pay the full costs of the proceeding.

¶34 In his appeal, Attorney Constant argues that the OLR mistakenly allowed his U.S. Bank records into evidence at the evidentiary hearing because the certification by a U.S. Bank officer was supported by an insufficient affidavit. He also asserts that the bank records received into evidence were

14

insufficient to meet the OLR's burden of proof. Finally, he asserts that a five-month suspension of his license to practice law is excessive. He argues that a public reprimand, or at most, a 60-day suspension, would be an appropriate sanction.

¶35 Attorney Constant maintains that he returned M.B.'s entire file to her, whereas M.B. and her boyfriend both testified that she did not receive her complete file. The referee found the testimony of M.B. and her boyfriend to be more credible than Attorney Constant's testimony on this issue. Attorney Constant argued that his testimony should have been believed. He says the record contained a statement that M.B. had a criminal record, and he argues the referee should have made a specific finding of fact on that point.

¶36 As to the appropriate sanction, Attorney Constant agrees that the referee engaged in a detailed thoughtful analysis of the mitigating factors; however, he says even a five-month suspension is too much and a public reprimand or a sixty-day suspension is adequate.

¶37 The OLR responds to Attorney Constant's appeal by arguing that the referee correctly admitted the certified U.S. Bank records into evidence. The OLR notes Wisconsin allows self-authenticating documents to be admitted into evidence based on circumstances, and pursuant to Wis. Stat. § 909.02(12)(a), "extrinsic evidence of authenticity as a condition precedent to admissibility is not required" for certified domestic records of regularly conducted activity. The referee notes that at the

15

evidentiary hearing, the U.S. Bank certified records were accompanied by an affidavit that included the following language:

> The documents delivered with this Affidavit in response to the Subpoena represent true and correct copies of documents which are in our files. These records were prepared in the ordinary course of business at or near the time of the act, condition or event.

¶38 The OLR says Wis. Stat. § 909.02(12) does not require the person certifying the record to state the source of their knowledge. The OLR says the U.S. Bank certification met the statutory requirements, and the referee properly admitted the bank documents into the record.

¶39 The OLR says this court should affirm the referee's finding that Attorney Constant did not give M.B. her entire client file. The OLR notes when testimony is conflicting, the referee is the ultimate arbiter of witness credibility. See In re Disciplinary Proceedings Against Pump, 120 Wis. 2d 422, 426-27, 355 N.W.2d 248 (1984).

¶40 In its cross-appeal, the OLR argues that a five-month suspension is inadequate due to the nature and severity of Attorney Constant's misconduct. The OLR advocates for a suspension of a least one year.

¶41 The OLR argues that Attorney Constant's trust account violations were systemic and intentional. It also says Attorney Constant's inability to identify whose funds he used for expenses and disbursement from his trust account demonstrates that the true extent of the trust account misconduct is unknown. The OLR argues that in addition to a suspension of at least one year, this court

16

should follow the referee's recommendation that Attorney Constant have his trust account monitored for two years after reinstatement.

¶42 A referee's findings of fact are affirmed unless clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit, regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶43 From our review of the record, we find there has been no showing that any of the referee's findings of fact are clearly erroneous. Accordingly, we adopt them. We further agree with the referee's conclusions of law that Attorney Constant violated the supreme court rules set forth above. We specifically find that Attorney Constant's challenge to the admissibility of his U.S. Bank records is meritless, and we find no basis to disturb the referee's credibility finding with respect to whether Attorney Constant returned M.B.'s entire client file.

¶44 Turning to the appropriate level of discipline, we conclude that a six-month suspension of Attorney Constant's law license, which will require him to file a formal petition for reinstatement, is appropriate.

¶45 Although no two disciplinary proceedings are identical, we agree with the referee that this case is somewhat similar to McClure. However, whereas Attorney McClure fully cooperated with the OLR and entered into a stipulation whereby he admitted virtually all of the facts alleged in the complaint, Attorney

17

Constant provided the OLR with incomplete and inconsistent trust account and client records, and he represented that he had not made cash withdrawals from his trust account when in fact he had done so. In addition, unlike Attorney McClure, who the referee found to be genuinely remorseful and was dealing with a variety of personal problems during the time the misconduct occurred, Attorney Constant has consistently maintained that he did nothing wrong. Imposing a six-month suspension, which will require Attorney Constant to petition for reinstatement, will provide assurance that he can be safely recommended to the profession, the courts, and the public as a person who is fit and capable to practice law in this state.

¶46 We also agree with the referee that in the event Attorney Constant's license is reinstated, he should be required to successfully complete 12 hours of CLE courses approved in advance by the OLR, at least six of which should relate to properly managing a trust account and he should have his trust account monitored by the OLR for at least two years. As is our usual custom, we find it appropriate to assess the full costs of this proceeding against Attorney Constant. Since the OLR states that Attorney Constant made full restitution to M.B., we do not impose a restitution award.

¶47 IT IS ORDERED that the license of Terry L. Constant to practice law in Wisconsin is suspended for a period of six months, effective March 10, 2020.

¶48 IT IS FURTHER ORDERED that, as a condition of the reinstatement of his license to practice law in Wisconsin, Terry

18

L. Constant shall be required to successfully complete 12 hours of continuing legal education courses approved in advance by the Office of Lawyer Regulation, at least six of which hours shall be in courses relating to properly managing a trust account.

¶49 IT IS FURTHER ORDERED that, as a condition of the reinstatement of his license to practice law in Wisconsin, Terry L. Constant shall have his trust account monitored by the Office of Lawyer Regulation for a period of two years.

¶50 IT IS FURTHER ORDERED that Terry L. Constant shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶51 IT IS FURTHER ORDERED that within 60 days of the date of this order, Terry L. Constant shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $13,409.63 as of December 10, 2019.

¶52 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.29(4).

¶53 BRIAN HAGEDORN, J. *(dissenting)*. I would adopt the referee's recommendation of a five-month license suspension rather than the six-month suspension imposed by the majority. Accordingly, I respectfully dissent.