# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2021AP33-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Terry L. Constant, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>      Complainant,<br>   v.<br>Terry L. Constant,<br>      Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST CONSTANT

| | |
|---|---|
| OPINION FILED: | November 23, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

JUSTICES:

Per curiam. ZIEGLER, C.J., filed a concurring opinion in which REBECCA GRASSL BRADLEY, HAGEDORN, and KAROFSKY, JJ., joined.

NOT PARTICIPATING:

ATTORNEYS:

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2021AP33-D

STATE OF WISCONSIN         :         IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Terry L. Constant, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant,**

   **v.**

**Terry L. Constant,**

      **Respondent.**

**FILED**

**NOV 23, 2022**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license revoked.*

¶1 PER CURIAM. We review Referee Charles H. Barr's report recommending that the court declare Attorney Terry L. Constant in default and revoke his license to practice law in Wisconsin for 13 counts of professional misconduct. The referee also recommends that Attorney Constant make restitution to the Wisconsin Lawyers' Fund for Client protection (the Fund) and to certain clients and that Attorney Constant pay the full costs associated with this proceeding.

¶2   No appeal has been filed so we review the referee's report pursuant to Supreme Court Rule (SCR) 22.17(2).[1]   After careful review of the matter, we agree with the referee that, based on Attorney Constant's failure to answer the Office of Lawyer Regulation's (OLR) complaint or otherwise appear in the proceeding, Attorney Constant is in default.   We conclude that revocation of Attorney Constant's license is an appropriate sanction for his professional misconduct.   We agree that Attorney Constant should be required to make restitution to the Fund and certain clients.   And finally, we conclude that he should be assessed the full costs of this proceeding, which total $4,135.06 as of June 20, 2022.

¶3   Attorney Constant was admitted to practice law in Wisconsin in 1968.   His professional disciplinary history consists of a six-month suspension of his license to practice law in 2020.   In re Disciplinary Proceedings Against Constant, 2020 WI 4, 390 Wis. 2d 1, 937 N.W.2d 599 (Constant I).   That case involved nine counts of misconduct involving numerous trust

---

[1] SCR 22.17(2) provides:

> If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

account violations, conversion, co-mingling of funds, and mishandling a personal injury settlement. Id., ¶24.[2]

¶4 On January 7, 2021, the OLR filed a complaint against Attorney Constant alleging 13 counts of attorney misconduct relating to three clients, S.C., M.R., and S.R., between 2014 and 2020, along with an order to answer. Referee Charles H. Barr was appointed on March 22, 2021. On March 1, 2021, Attorney Constant filed a verified Petition to Voluntarily Surrender a Wisconsin License, in which he stated that he "cannot successfully defend" against the grievances pending against him and that he wished to surrender his license "permanently."[3]

¶5 The OLR made multiple failed attempts at personal service at Attorney Constant's Kenosha address on file with the State Bar of Wisconsin (State Bar). On March 9, 2021, the OLR

---

[2] While not referenced in the complaint or the referee's report, we take judicial notice that the State Bar's records indicate that Attorney Constant's law license currently is administratively suspended for failure to pay mandatory bar dues and for failure to file required trust account certification. Additionally, Attorney Constant did not petition for reinstatement following his six-month suspension by this court in Constant I.

[3] SCR 10.03(7)(a) allows an attorney to file a petition to surrender his or her license to practice law with the State Bar and this court. However, voluntary surrender of a law license is not appropriate in response to a pending disciplinary matter. In re Voluntary Resignation of Robinson, 2010 WI 37, 323 Wis. 2d 727, 729, 782 N.W.2d 98. To the extent that Attorney Constant intended to file a petition for consensual license revocation under SCR 22.19, he did not follow the proper procedure for doing so. See SCR 22.19(3)-(4).

sent the complaint by certified mail to that address, and tracking information indicated that it was delivered in Henderson, Nevada. The referee ultimately concluded that substitute service was accomplished on March 16, 2021, and Attorney Constant's answer was due April 5, 2021. Attorney Constant did not file an answer.

¶6 Attorney Constant failed to appear for a telephonic scheduling conference on April 22, 2021, at which time the OLR informed the referee that Attorney Constant's wife indicated a health issue prevented his attendance. Attorney Constant failed to appear for a subsequent scheduling conference, and the OLR again informed the referee that Attorney Constant's wife stated medical issues prevented his participation. The referee ordered Attorney Constant to execute medical releases so the OLR could determine if he had a medical incapacity that made defense of the proceeding impossible. See SCR 22.16(4)(a). Attorney Constant returned medical releases to the OLR. The OLR obtained some of Attorney Constant's medical records but ultimately advised the referee that the OLR could not reach a conclusion on whether Attorney Constant had a medical incapacity.

¶7 The OLR indicated its intent to file a motion for default and invited Attorney Constant to provide further information to support any claim of medical incapacity. Attorney Constant did not respond and did not assert a medical incapacity defense.

¶8 The OLR filed a motion for default on February 21, 2022, along with an affidavit showing proof of substitute

4

service. On March 1, 2022, the referee issued an order concluding that "justice is best served by providing Respondent an additional and final opportunity to assert his incapacity claim as a matter of record in response to the motion for default." He therefore ordered that Attorney Constant had 30 days to file a response to the motion for default, "in which he may allege incapacity and any other reason why the motion should not be granted." No response was filed.

¶9 Following a hearing, the referee issued an order recommending that this court find Attorney Constant in default and that the factual allegations in the complaint be accepted as true. The order also concluded Attorney Constant had been properly served, recited several facts indicating that Attorney Constant had actual notice of the proceeding, and noted that he had been copied on notices of all hearings, orders, and correspondence. The referee also ordered the OLR to submit a brief as to the appropriate level of discipline and allowed Attorney Constant to do the same.

¶10 The OLR filed a brief advocating that that the referee recommend that this court should revoke Attorney Constant's license to practice law and that he be ordered to pay restitution. Attorney Constant did not file a response.

¶11 On May 31, 2022, the referee issued a report and recommendation with findings of fact and conclusions of law as to default and the underlying misconduct allegations. As to default, the referee found that the OLR unsuccessfully attempted personal service on Attorney Constant at his State Bar address

5

in Kenosha on five different dates and thereafter mailed a certified copy of the complaint, which was ultimately delivered to an address in Henderson, Nevada. Attorney Constant filed a signed and notarized petition to voluntarily surrender his law license, in which he indicated his residence was a P.O. Box in Henderson, Nevada. Attorney Constant left a voicemail with the OLR's counsel early in the proceeding "in which Attorney Constant referred to service on him of documents in the proceeding." Attorney Constant's wife had multiple communications with counsel for the OLR acknowledging awareness of the proceeding and she provided a residential address in Henderson, Nevada, to the OLR. All of the referee's written communications with the OLR's counsel, as well as all notices and orders, were copied to Attorney Constant at the e-mail address on file for him with the State Bar, and none of them bounced back. The March 1, 2022 order allowing Attorney Constant to oppose the motion for default and assert a medical incapacity defense was mailed to the Henderson, Nevada address that Attorney Constant's wife provided, in addition to being mailed to the address in Kenosha and e-mailed. Counsel for the OLR also e-mailed a copy of the order to Attorney Constant's wife in response to an e-mail from her. The referee found that these facts constituted "substantial indicia of Attorney Constant's awareness of this proceeding throughout its pendency."

¶12 Based on these findings, the referee concluded that Attorney Constant was properly served with the complaint, failed

to timely file an answer or otherwise appear in the proceeding, and therefore was in default. The referee further concluded that neither Attorney Constant nor anyone on his behalf claimed as a matter of record that he possessed a medical incapacity that made defense of the proceeding impossible. The referee further concluded that it was "implausible" that Attorney Constant could not have done so if he intended to pursue such a claim based on his filing of a petition to surrender his law license during the same time period. Accordingly, the referee recommended that this court find Attorney Constant in default.

¶13 Having concluded that Attorney Constant was in default for failing to answer, the referee adopted and accepted the salient factual allegations of the complaint. Those allegations are summarized as follows.

¶14 In 2011, S.C. hired Attorney Constant to represent her in a personal injury action after a January 2011 car accident (first accident). Attorney Constant settled the case and provided no further services relating to the matter after April 15, 2015, but retained $3,756.86 in his trust account. However, by April 10, 2016, his trust account held only $34.21 pertaining to the first accident.

¶15 On April 15, 2015, S.C. was involved in another car accident and hired Attorney Constant to represent her (second accident). Attorney Constant was entitled to one-third of any recovery, plus reimbursements of costs.

¶16 On January 31, 2018, Attorney Constant received a partial insurance payment for S.C.'s medical payments (medpay)

7

claim in the second accident in the amount of $1,205.89. Attorney Constant deposited the check into his trust account on February 7, 2018, and disbursed $401.96 (one-third) of that amount to himself. The same day, he issued another check from the trust account to himself for $800, which indicated it was for legal fees relating to the first accident. The following day, he wrote another trust account check payable to himself for $700, again indicating it was for legal fees relating to the first accident. These withdrawals extinguished S.C.'s balance in Attorney Constant's trust account. In the next two months, Attorney Constant disbursed seven more checks from his trust account to himself, totaling $4,900, which he indicated were for legal fees from S.C.'s first accident.

¶17 On April 10, 2018, Attorney Constant deposited an insurance settlement check for $50,000 for S.C.'s second accident. He orally notified S.C. of the check, but told her he could not disburse any settlement funds to her until all claims had been settled and her medical bills were paid. Over the next 16 months, Attorney Constant repeated these representations to S.C.

¶18 On or about the same day that Attorney Constant received the $50,000 settlement check, he disbursed $200 to himself, indicating it was for legal fees relating to the first accident. He also wrote two additional checks to himself disbursing one-third of the settlement ($16,666.66) from the second accident. Over the next six months, Attorney Constant disbursed 41 checks to himself from his trust account totaling

$33,200, purportedly as legal fees relating to S.C.'s first accident. As a result, Attorney Constant held only $271.25 from the $50,000 settlement check in trust. He later wrote another check to himself for $1,000, purportedly for fees relating to the first accident and matters unrelated to S.C.

¶19 Between December 12, 2018 and February 12, 2019, Attorney Constant received 42 medpay checks totaling $32,462.43 relating to S.C.'s second accident. Attorney Constant orally told S.C. he had received some medpay checks, but he did not notify her in writing of his receipt of each and again represented that he could not disburse any funds to S.C. until all medpay claims were satisfied. Attorney Constant paid only $122.27 in medpay claims and disbursed the remainder to himself, purportedly as fees for other matters.

¶20 On August 2, 2019, Attorney Constant received another insurance check for $17,500 relating to the second accident. Before depositing this amount, Attorney Constant should have been holding $53,356.64 in trust for S.C., but had a balance of only $1,762.70. Attorney Constant deposited the $17,500 check, which he later disbursed to S.C. at the same time he gave her a promissory note for $47,557.30 for the remainder of the settlement.[4] At that time, S.C. had outstanding medical bills from the second accident, but Attorney Constant made no further

---

[4] The OLR's brief regarding sanctions indicates that after the complaint was filed, "the Wisconsin Lawyers' Fund for Client Protection (Fund) fully paid a claim filed by [S.C.]"

9

payments to S.C. or on her behalf, and he failed to make any payments on the promissory note.

¶21 As a result of these allegations, the OLR claimed Attorney Constant engaged in four counts of attorney misconduct. The OLR alleged that Attorney Constant: violated SCR 20:1.15(d)(1)[5] by failing to give written notice of funds (Count 1); violated SCR 20:1.15(b)(1)[6] by failing to hold and safeguard settlement funds (Count 2); violated SCR 20:1.3[7] by failing to act with reasonable diligence to pay S.C.'s medical providers

---

[5] Effective July 1, 2016, substantial changes were made to Supreme Court Rule 20:1.15, the "trust account rule." See S. Ct. Order 14-07, 2016 WI 21 (issued Apr. 4, 2016, eff. July 1, 2016). Former SCR 20:1.15(d)(1) was renumbered as SCR 20:1.15(e)(1). The text of the rule was not changed and provides:

> Upon receiving funds or other property in which a client has an interest, or in which a lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

[6] SCR 20:1.15(b)(1) provides:

> A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

[7] SCR 20:1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

10

(Count 3); and violated SCR 20:8.4(c)[8] by converting client trust funds (Count 4).

¶22 In a different matter, on August 17, 2016, M.R. and S.R. were in a car accident and hired Attorney Constant to represent them. Under their agreement, Attorney Constant would be entitled to one-third of their recovery as a legal fee. The statute of limitations on M.R.'s and S.R.'s claims expired on August 17, 2019.

¶23 In April 2017, Attorney Constant received and deposited an insurance check settling M.R.'s claims against one insurer for $6,850. Attorney Constant later disbursed $2,975.97 to M.R., paid $1,365 to satisfy a medical lien, and disbursed $2,488.35 to himself. Despite still holding $20.68 in trust for M.R., Attorney Constant told M.R. that he had disbursed the entirety of the settlement.

¶24 In February 2018, Attorney Constant received $9,161.60 from an insurer in partial payment of S.R.'s medpay claims and deposited the same into his trust account. He did not notify S.R. of this payment, but paid some of her medical expenses, disbursed $2,980 to her, and paid $3,053.56 to himself for his one-third fee. By November 2018, Attorney Constant's trust account held only $544.83 relating to S.R., and he told her he could not disburse the remaining medpay funds due to outstanding liens. However, between February 2019 and August 2019, Attorney

---

[8] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

11

Constant disbursed an additional $19,250 in trust funds to himself purportedly for fees relating to S.R.

¶25 In early August 2019, an insurer offered to settle S.R.'s claims for $4,348.40; Attorney Constant forwarded the offer to S.R. S.R. never authorized the settlement, but Attorney Constant agreed to settle her claims for $4,400. Attorney Constant received the funds, deposited them into his trust account, but did not notify S.R. Attorney Constant disbursed $300 of the settlement funds to himself, and never disbursed any to S.R.

¶26 Attorney Constant never provided S.R. or M.R. with an accounting of the funds he received or paid out on their behalf. In September 2019, Attorney Constant prepared to close his law office, but did not inform S.R. or M.R., arrange for successor counsel, or otherwise communicate with them. When Attorney Constant closed his office on or about September 30, 2019, he had not resolved all of S.R.'s outstanding liens or disbursed the remainder of her settlement funds. In November 2019, S.R. and M.R. discovered that the statute of limitations on their claims had expired and attempted to contact Attorney Constant by phone and e-mail, but his phone was disconnected and he did not respond to their e-mails. Attorney Constant also did not respond to further inquiries in January 2020 about the status of S.R.'s claims and settlement.

¶27 On January 28, 2020, in Constant I, this court suspended Attorney Constant's license to practice law in Wisconsin for six months, effective March 10, 2020.

12

Nonetheless, in February and March 2020, Attorney Constant attempted to negotiate one of S.R.'s outstanding medical bills and attempted to negotiate a settlement with S.R's and M.R.'s former landlord. On April 15, 2020, Attorney Constant sent a proposed settlement to the landlord along with a check drawn from his trust account for $500. In April and May 2020, S.R. and M.R. repeatedly asked Attorney Constant to pay the remainder of S.R.'s settlement funds. He did not do so.

¶28 Based on these allegations, the OLR claimed that Attorney Constant engaged in nine counts of misconduct. The OLR claimed that Attorney Constant: violated SCR 20:1.15(d)(1) by failing to provide prompt notice of receipt of settlement funds and deliver them to S.R. (Count 5); violated SCR 20:1.4(a)(3)[9] by failing to provide S.R. and M.R. with information necessary to understand their settlements and the status of their claims (Count 6); violated SCR 20:1.2(a)[10] by failing to obtain S.R.'s

_____

[9] SCR 20:1.4(a)(3) provides: "A lawyer shall keep the client reasonably informed about the status of the matter."

[10] SCR 20:1.2(a) provides:

Subject to pars. (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by SCR 20:1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case or any proceeding that could result in deprivation of liberty, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be

13

authorization to settle her claims before accepting a settlement (Count 7); violated SCR 20:1.15(b)(1) by failing to safeguard settlement funds belonging to S.R., M.R., and third parties (Count 8); violated SCR 20:8.4(c) by converting settlement funds for his own use (Count 9); violated SCR 20:8.4(c) by misrepresenting that numerous disbursements from his trust account were related to his representation of S.R. (Count 10); violated SCR 20:1.4(a)(4)[11] by failing to respond to S.R.'s and M.R.'s requests for information (Count 11); violated SCR 20:1.16(d)[12] by failing to inform S.R. and M.R. that he closed his law office and had terminated his representation or otherwise intended to take no further action on their behalf (Count 12); and violated SCR 22.26(2),[13] enforceable via SCR

---

entered, whether to waive jury trial and whether the client will testify.

[11] SCR 20:1.4(a)(4) provides: "A lawyer shall promptly comply with reasonable requests by the client for information."

[12] SCR 20:1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[13] SCR 22.26(2) provides:

An attorney whose license to practice law is suspended or revoked or who is suspended from the practice of law may not engage in this state in the

20:8.4(f),[14] by practicing law in Wisconsin at a time when his license was suspended (Count 13).

¶29 The referee concluded that Attorney Constant violated each provision as alleged. The referee then addressed the proper sanction for Attorney Constant's violations, "focus[ing] principally on the conduct that directly and most tangibly injured his clients——namely, his conversion to his own use of funds that he had a duty to hold in trust for distribution to those clients or for their benefit."

¶30 The referee noted that the OLR advocated for revocation of Attorney Constant's license based on principles of progressive discipline articulated in ABA Standards for Imposing Lawyer Sanctions, this court's decision in Constant I, and various prior disciplinary cases. The OLR noted that in Constant I, this court suspended Attorney Constant's license to practice law for six months based on nine counts of misconduct involving systemic trust account problems, conversion, and mishandling an injury settlement. The referee concluded that a comparison of the conduct in the two cases "unquestionably

---

practice of law or in any law work activity customarily done by law students, law clerks, or other paralegal personnel, except that the attorney may engage in law related work in this state for a commercial employer itself not engaged in the practice of law.

[14] SCR 20:8.4(f) provides: "It is professional misconduct for a lawyer to violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

establishes a pattern of similar misconduct with regard to funds held, or that should have been held, in trust for the benefit of clients" and that the facts underlying the violations in Constant I "poignantly illustrate that the trust account misconduct involved in this case was a continuation of a pattern of misconduct" from the prior case. The referee concluded that progressive discipline was appropriate even though most of the conduct in the present case occurred before this court's decision in Constant I. He concluded that this case called for a sanction that was "substantially more severe" because all of the clients and lienholders in Constant I were eventually paid whereas here, Attorney Constant's clients and lienholders lost "over $53,000 in the aggregate."

¶31 In assessing the severity of the sanction, the referee noted the general rule under ABA Standards § 4.11 that disbarment is appropriate when an attorney knowingly converts client property and causes injury to a client, but stated a "more particularized analysis is required" because in Constant I, this court imposed less severe punishment for the same type of conduct. That said, the referee agreed with the OLR that the facts of this case involved "multiple aggravating factors under ABA Standards §§ 9.22(a)—(d) and (g)—(k)," including "prior disciplinary history, dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, substantial experience in the practice of law, and indifference to paying restitution." However, the referee stated that some

16

of these factors "deserve caveats" because most of the misconduct here occurred before imposition of discipline in Constant I and because while Attorney Constant's failure to participate "is deemed a refusal to acknowledge the wrongful nature of his conduct," it "should be viewed less harshly than that of an attorney who defends himself unjustifiably." And the referee further concluded that Attorney Constant's "ill-fated petition to surrender his law license" could be "construed, albeit generously, as an acknowledgment of wrongful conduct." Out of those factors, the referee concluded that the most important aggravating factor was Attorney Constant's "apparent indifference to paying restitution."

¶32 As to mitigating factors, the referee concluded that Attorney Constant failed to raise a triable issue of fact as to whether his health issues caused his misconduct. However, the referee acknowledged Attorney Constant's legal career spanned over half a century and that in Constant I, this court noted that he "brought credit to the legal profession by his many positive community involvements." The referee concluded that in the prior case, "this Court accorded substantial weight to this mitigating factor" given the imposition of only a six-month suspension.

¶33 The referee then looked to prior disciplinary cases cited by the OLR——including In re Disciplinary Proceedings Against Runyon, 2020 WI 74, 393 Wis. 2d 612, 948 N.W.2d 62; In re Disciplinary Proceedings Against Grogan, 2014 WI 39, 354 Wis. 2d 659, 847 N.W.2d 817; and In re Disciplinary Proceedings

17

Against Krombach, 2005 WI 170, 286 Wis. 2d 589, 707 N.W.2d 146——and concluded that none of them "definitively assist with the choice between a lengthy suspension or revocation" in this case. Surveying several other decisions, the referee concluded that "[i]n other instances of an attorney's conversion of a significant amount of money that was or should have been held in trust for clients, this Court has typically imposed revocation in the absence of substantial mitigating facts." The referee stated that such mitigating facts include "restitution of all or almost all of the converted funds, other indicia of remorse and acceptance of responsibility, and unusually severe adverse conditions that affected the attorney and were not of his or her own making."

¶34 The referee concluded that no mitigating factors were present in this case and that "[t]he decisive fact in [the] analysis is the lack of evidence that Attorney Constant has so much as lifted a finger to reimburse the victims of his misconduct, or at the very least to explain why he cannot do so." The referee further explained that Attorney Constant's long legal career and contributions to the community were "insufficient to counterbalance his complete indifference to restitution."

¶35 The referee concluded that revocation was "necessary to fulfill at least two of the four primary goals of attorney discipline: to address the seriousness of the misconduct, and to deter other attorneys from engaging in similar misconduct." And while the OLR had advised that the Fund reimbursed S.C.'s

18

loss of $47,557.30, that "did not lessen the seriousness of Attorney Constant's conversion. It merely transfers the loss from S.C. to all members of the Wisconsin Bar."

¶36 Accordingly, the referee recommended that this court revoke Attorney Constant's license to practice law in Wisconsin and further recommended that the court order Attorney Constant to pay restitution in the amount of $47,557.30 to the Fund, $5,757.87 to S.R., and $225.70 to M.R. Finally, the referee recommended that Attorney Constant be assessed the full costs of this proceeding, which were determined to be $4,135.06, and that costs be paid after Attorney Constant paid restitution.

¶37 We review the referee's findings of fact under the clearly erroneous standard and review conclusions of law de novo. Runyon, 393 Wis. 2d 612, ¶11. We determine the appropriate level of discipline independent of the referee's recommendation. Id.

¶38 We first address the issue of default. Having reviewed the record, we see no reason to disturb the referee's factual findings that Attorney Constant was properly served with the complaint via substitute service and that he did not timely file an answer. The record shows that the OLR made several unsuccessful attempts at personal service at the address listed on file for him with the State Bar. The OLR then accomplished substitute service on Attorney Constant by mailing a certified copy of the complaint to that address which was then forwarded and delivered to Henderson, Nevada. See SCR 22.13(1) (if personal service cannot be accomplished then substitute service

19

may be effectuated by "sending by certified mail an authenticated copy of the complaint and order to answer to the most recent address furnished by the respondent to the state bar"). Attorney Constant did not file an answer within the time prescribed by the rules and indeed filed no answer at all. See SCR 22.14(1) ("The respondent shall file an answer with the supreme court and serve a copy on the office of lawyer regulation within 20 days after service of the complaint").

¶39 While nothing in our supreme court rules or the rules of civil procedure require proof of actual notice before a default for failing to answer can be declared,[15] given the severity of the recommended sanction in this case, we further agree that the record supports the referee's determination that Attorney Constant had actual knowledge of this proceeding before the referee declared a default. After the complaint was filed, but before service was accomplished, Attorney Constant filed a Petition to Voluntarily Surrender a Wisconsin Law License, listing a P.O. Box address in Henderson, Nevada, and indicating that he had "grievances pending against me, which I cannot successfully defend." This filing demonstrates Attorney Constant's actual knowledge of the disciplinary proceeding.

---

[15] See SCR 22.15(1) (permitting referee to consider a motion for default following the scheduling conference); SCR 22.16(1) (stating that a referee has the powers of a judge trying a civil action and that the rules of civil procedure and evidence shall be followed); Wis. Stat. § 806.02(1), (3) (default judgment may be entered after time for joining issue has expired upon proof of service).

¶40 Additionally, the referee mailed copies of all pleadings, motions, orders, and correspondence to Attorney Constant's address on file with the State Bar and sent copies of the same to the e-mail address Attorney Constant maintained on file with the State Bar. Attorney Constant also returned signed medical release authorizations to the OLR, as ordered by the referee.

¶41 Finally, after the OLR filed its motion for default, the referee entered an order giving Attorney Constant additional time to file a response and assert any defenses he wished to make. The referee indicated that this order, in addition to being sent in the manner described above, was also mailed to a residential address in Henderson, Nevada, that was provided to the OLR by Attorney Constant's wife. See Wis. Stat. § 801.14(1) ("No service need be made on parties in default for failure to appear.").

¶42 Therefore, the record demonstrates that the OLR made proper substitute service of the complaint on Attorney Constant, that he had actual awareness of the proceeding, that he was provided with notice of the motion for default, and that he chose not to join issue or otherwise respond to the allegations

against him in this proceeding.[16] We agree with the referee that Attorney Constant is in default for failing to timely answer and join issue. In re Disciplinary Proceedings Against Kelly, 2012 WI 55, ¶19, 341 Wis. 2d 104, 814 N.W.2d 844 ("A defendant's or respondent's failure to join issue is the usual situation where a default may be declared").

¶43 Because Attorney Constant is in default for failure to timely answer, the allegations in the complaint are accepted as true for purposes of this proceeding. Id., ¶25. The referee therefore properly relied upon the allegations in the complaint as clear, satisfactory, and convincing evidence that Attorney Constant committed all 13 counts of misconduct as alleged in the complaint. Runyon, 393 Wis. 2d 612, ¶12.

¶44 We next address the issue of the proper level of discipline in this case. We agree with the referee that given the nature of the conduct involved in the 13 charged counts of misconduct, as well as Attorney Constant's prior disciplinary record, that the appropriate discipline in this case is to revoke Attorney Constant's license to practice law in Wisconsin,

---

[16] While the referee raised the issue of a possible medical incapacity defense in this case, see SCR, 22.16(4)(a), the record shows that after reviewing some of Attorney Constant's medical records, the OLR was unable to make a determination on the issue and that the referee gave Attorney Constant the opportunity to assert a incapacity defense in response to the OLR's motion for default. As no medical incapacity claim was ever made in this proceeding, we do not discuss the matter further.

require him to pay restitution to his former clients and the Fund, and impose the full costs of this proceeding.

¶45 In determining the appropriate sanction, we consider the following factors: "the seriousness, nature and extent of the misconduct; the level of discipline needed to protect the public; the need to impress upon the attorney the seriousness of the misconduct; and the need to deter other attorneys from similar misconduct." In re Disciplinary Proceedings Against Zenor, 2021 WI 77, ¶10, 399 Wis. 2d 326, 964 N.W.2d 775. Generally, attorney discipline is progressive in nature absent extenuating circumstances. In re Disciplinary Proceedings Against Dade, 2017 WI 51, ¶9, 375 Wis. 2d 140, 895 N.W.2d 37.

¶46 We agree with the referee that progressive discipline is appropriate in this case given Attorney Constant's prior disciplinary history and sanctions imposed in Constant I. In that proceeding we suspended Attorney Constant's license to practice law for six months as a result of nine counts of misconduct involving an array of trust account violations including failing to maintain trust account records, failing to provide written notice of receipt of settlement proceedings in trust, failing to promptly disburse settlement proceeds, converting trust funds for business and personal use, making improper electronic transfers from client trust accounts, making disbursements from a client trust account before funds were deposited that were attributable to the matter, and depositing personal funds into his trust account. Constant I, 390 Wis. 2d 1, ¶24. The referee in that case characterized the

23

misconduct as "serious" and said these were "major violations." Id., ¶27. We imposed a more severe sanction than recommended by the referee in that case because Attorney Constant was not remorseful for his conduct and "consistently maintained he did nothing wrong." Id., ¶45.[17] We decided that a six-month suspension was appropriate because requiring Attorney Constant to petition for reinstatement would "provide assurance that he can be safely recommended to the profession, the courts, and the public as a person who is fit and capable to practice law in this state." Id.

¶47 The referee concluded that the misconduct in this case was a continuation of a pattern of trust account violations in Constant I. We agree. But the conduct in the present case is much more severe. Whereas Attorney Constant ultimately made restitution to the client whose trust funds he converted in the previous matter, id., ¶46, in the present case, he pocketed over $53,000 in trust funds belonging to his clients or lienholders. And while Attorney Constant attempted to (unsuccessfully) justify his misconduct in the prior case as a simple matter of poor bookkeeping practices, no such claim can be made in the present case. The record demonstrates multiple instances where Attorney Constant converted large sums of client trust funds for

---

[17] The court imposed a six-month suspension requiring a petition for reinstatement whereas the referee recommended only a five-month suspension. In re Disciplinary Proceedings Against Constant, 2020 WI 4, ¶¶1-2, 390 Wis. 2d 1, 937 N.W.2d 599. Justice Hagedorn dissented and would have adopted the referee's recommended five-month suspension. Id., ¶53.

his own personal use, misrepresented the status of settlement payments to clients, and fraudulently attempted to characterize disbursements as relating to closed or unrelated legal matters. In short, the record here demonstrates repeated instances of outright theft of client trust funds and misrepresentations in an attempt to justify it.

¶48 While the referee focused almost exclusively on the Attorney Constant's conversion of trust funds, we note that the misconduct here is more serious than in Constant I in other respects. For instance, Attorney Constant settled a portion of S.R.'s claim without her approval. He closed his law practice while S.R.'s and M.R.'s claims were unresolved and after the statute of limitations had run on some of the claims, and refused to communicate with them about their case——effectively abandoning them and their unresolved claims. Moreover, despite the suspension of his license following Constant I, he continued to practice law by attempting to negotiate and resolve minor aspects of S.R.'s and M.R.'s claims. In so doing, Attorney Constant exhibited indifference to his professional responsibilities to his clients and also a clear disregard of the authority of this court.

¶49 We agree with the referee that the nature, extent, and severity of misconduct involved here "calls for a sanction substantially more severe" than the six-month suspension we meted out in Constant I. The referee discussed several prior disciplinary cases where this court concluded that revocation of an attorney's license was a proper sanction for repeated

25

occurrences of conversion of client trust funds. While the referee found distinguishing facts in several of these cases, and while we agree that no two cases are the same and each must be decided on its own particular facts, we conclude that many of the cases the referee discussed demonstrate that revocation is the appropriate sanction in the present matter.

¶50 For instance, in Grogan, 354 Wis. 2d 659, we revoked the license of an attorney with prior disciplinary history for misappropriating the funds of several clients, lack of diligence, for engaging in dishonest and fraudulent practices in multiple matters, and for failing to cooperate with the OLR's investigation into his misconduct. In Runyon, 393 Wis. 2d 612, ¶23, we revoked the license of an attorney with several prior disciplinary matters who committed 23 counts of misconduct involving four separate clients, including conversion of large sums of trust funds based on "a clear pattern of misconduct by Attorney Runyon and disregard for his obligations as an attorney in this State." While there are some factual differences between these two cases and Attorney Constant's current misconduct, we nevertheless conclude that the facts of the present case demonstrate a similar pattern of misconduct and disregard for Attorney Constant's obligations as an attorney in this state.

¶51 The referee found In re Disciplinary Proceedings Against Hinnawi, 202 Wis. 2d 113, 549 N.W.2d 245 (1996) most analogous. In that case, this court concluded that revocation was proper where the attorney timely failed to perform his

26

duties as representative of an estate, charged it an unreasonable fee, failed to keep funds in his client trust accounts, made numerous misrepresentations to the OLR's predecessor agency during its investigation, practiced law while suspended from practice, and did not respond to client inquiries. The referee also discussed Krombach, 286 Wis. 2d 589, ¶63, where this court revoked an attorney's license for converting large sums of a client's money for personal use, altered documents in an attempt to hide his theft, took advantage of a vulnerable client, and failed to accept responsibility for his wrongful actions. In so doing, we stated that "[a]lthough each case turns on its specific facts, in many instances we have revoked the licenses of attorneys that have converted client funds to their own personal use." Id., ¶63. Again, while neither Hinnawi nor Krombach involve the exact same set of facts as the present case, the nature and seriousness of the misconduct in those cases is analogous to Attorney Constant's multiple instances of misconduct, and the sanction imposed in those cases demonstrate that revocation is warranted in the present case.

¶52 Accordingly, after a careful review of the record and similar disciplinary cases, we agree with the referee that revocation of Attorney Constant's license to practice law in Wisconsin is appropriate in this case. The misconduct here involves repeated instances of Attorney Constant converting large sums of client trust funds for his personal use, failing to advise his clients of the status of their cases and

27

settlement proceedings, multiple acts of dishonesty in attempting to falsely characterize disbursements, abandoning and failing to communicate with his clients, an act of settling a claim without his client's permission, and practicing law while his license was suspended for engaging in similar conduct in the past. Attorney Constant has not acknowledged the wrongful nature of his actions, shown any remorse, or attempted to make restitution. Nor is there any evidence of other mitigating factors that could explain Attorney Constant's actions. Cf. In re Disciplinary Proceedings Against Nunnery, 2009 WI 89, ¶82, 320 Wis. 2d 422, 769 N.W.2d 858 (revocation not appropriate in case of conversion of client funds, misrepresentations, and other misconduct when attorney "indicated his remorse, accepted responsibility . . . made significant restitution" and where attorney was "faced with significant stressors involving his health, his family, as well as his law practice.") Revocation is necessary given the seriousness of Attorney Constant's misconduct, the harm caused to his clients, his prior disciplinary history, and the need to deter attorneys from engaging in similar misconduct and protect the public.[18]

¶53 We agree with the referee that Attorney Constant should pay restitution to his clients. However, given that the

---

[18] Although three justices join the concurrence authored by Chief Justice Ziegler, that fact does not effect a change to our current rule governing license revocation. See SCR 22.29(2).

28

Fund has already reimbursed S.C.,[19] we order that the amounts owed to S.R. and M.R. be given priority before restitution is made to the Fund. Finally, we follow our normal practice of imposing the full costs associated with this matter. See SCR 22.24(1m).

¶54 IT IS ORDERED that the license of Terry L.r Constant to practice law in Wisconsin is revoked, effective the date of this order.

¶55 IT IS FURTHER ORDERED that within 60 days of the date of this order, Terry L. Constant shall pay restitution as follows: $5,757.87 to S.R.; $225.70 to M.R.; and $47,557.30 to the Wisconsin Lawyers' Fund for Client Protection for the claims of S.C., after full restitution has been made to S.R. and M.R.

¶56 IT IS FURTHER ORDERED that within 60 days of the date of this order, Terry L. Constant shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $4,135.06 as of June 20, 2022.

¶57 IT IS FURTHER ORDERED that payment of restitution is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶58 IT IS FURTHER ORDERED that all pleadings and documents filed by the parties in this matter that have been marked sealed

---

[19] As noted, the OLR informed the referee in a pleading that the Fund paid the full amount of S.C.'s claim for $47,557.30. While there is no documentation of that payment in the record, we will accept the OLR's representation that such payment was made.

or confidential shall remain so until further order of the court.

¶59 IT IS FURTHER ORDERED that Terry L. Constant shall comply, if he has not already done so, with the requirements of SCR 22.26 pertaining to the duties of a person whose license to practice law in Wisconsin has been revoked.

¶60 IT IS FURTHER ORDERED that the administrative suspension of Terry L. Constant's license to practice law in Wisconsin, due to his failure to pay mandatory bar dues and for failure to file Office of Lawyer Regulation trust account certification, will remain in effect until each reason for the administrative suspension has been rectified pursuant to SCR 22.28(1).

¶61 ANNETTE KINGSLAND ZIEGLER, C.J. *(concurring).* I concur in the court's order revoking Attorney Constant's license to practice law in Wisconsin. I write separately to point out that in Wisconsin the "revocation" of an attorney's law license is not truly revocation because the attorney may petition for reinstatement after a period of five years. See SCR 22.29(2). I believe that when it comes to lawyer discipline, courts should say what they mean and mean what they say. We should not be creating false perceptions to both the public and to the lawyer seeking to practice law again. See In re Disciplinary Proceedings Against Moodie, 2020 WI 39, 391 Wis. 2d 196, 942 N.W.2d 302 (Ziegler, J., dissenting). And, as I stated in my dissent to this court's order denying Rule Petition 19-10, In the Matter of Amending Supreme Court Rules Pertaining to Permanent Revocation of a License to Practice Law in Attorney Disciplinary Proceedings, I believe there may be rare and unusual cases that would warrant the permanent revocation of an attorney's license to practice law. See S. Ct. Order 19-10 (issued Dec. 18, 2019) (Ziegler, J., dissenting).

¶62 I am authorized to state that Justices REBECCA GRASSL BRADLEY, BRIAN HAGEDORN, and JILL J. KAROFSKY join this concurrence.

1